**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

In re:   Liquidating Trust of ResMAE Mortgage Corporation
f/k/a ResMAE Mortgage Corporation

| | |
|---|---|
| Merrill Lynch Bank USA, Merrill Lynch Mortgage Lending Inc., and Merrill Lynch Funding Corporation,<br><br>                    Appellants,<br><br>v.<br><br>ResMAE Mortgage Corporation, RMC Mortgage Holdings LLC, and the Liquidating Trust of ResMAE Mortgage Corporation,<br><br>                    Appellees. | Civil Action No. 07-428 (SLR)<br><br><br><br><br>Bankruptcy Case No. 07-10177<br>Bankruptcy Appeal No. 07-69 |

**CONSENT MOTION TO ENLARGE TIME PERIOD STAYING
MEDIATION PURSUANT TO RULE 9006(b)
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

The Liquidating Trust of ResMAE Mortgage Corporation (the "Trust"), by and through its undersigned counsel, hereby files this Consent Motion to Enlarge Time Period Staying Mediation Pursuant to Rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "Motion"). In support of the Motion, which has been consented to by the above-captioned appellants (the "Appellants" and the other Appellees, collectively with the Trust, the "Parties") and the Mediator (defined below), the Trust hereby represents as follows:

**INTRODUCTION**

The Parties are mindful of the Court's order advising them that there would be no further extensions of the stay pending appeal following the current July 18, 2008 deadline, but respectfully request a further extension given the substantial developments affecting the appeal

and the Debtor's estate.  Specifically, on July 3, 2008, the Parties filed with the bankruptcy court a motion seeking approval of a global settlement (the "Global Settlement") with numerous parties, including the Appellants.

The Global Settlement resolves dozens of claims filed by warehouse lenders and loan purchasers that aggregate in excess of $1.0 billion dollars, including Appellants' claims. The claims resolved by the Global Settlement account for approximately ninety (90%) of all unsecured claims asserted against the estate.  The Global Settlement paves the way for a final resolution of the Debtor's case, and expedites and maximizes distributions to creditors.  Upon entry of a final order approving the Global Settlement, Appellants have agreed to withdraw this appeal.

The hearing on the Global Settlement is currently scheduled for July 30, 2008. However, this Court's order requires the Parties to proceed with mediation on July 18, 2008, with mediation papers to be submitted on July 25, five days before the expected approval of the Global Settlement.  Given these circumstances, the Parties respectfully submit that there is good cause to further extend the deadline for a short period of time in order to obtain approval of the Global Settlement, which will moot this appeal.

## JURISDICTION

1.      This Court has jurisdiction over this Motion under 28 U.S.C. § 158(a).  Venue of this proceeding and this Motion is properly in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for relief sought herein are Bankruptcy Rules 8011(b) and 9006(b).

**BACKGROUND**

3.      On February 12, 2007, ResMAE Mortgage Corporation, f/k/a RMC Mortgage

Holdings LLC ("ResMAE") filed a voluntary petition for relief under chapter 11 of title 11 of the

United States Code, 11 U.S.C. §§ 101 *et seq.*, in the United States Bankruptcy Court for the

District of Delaware (the "Bankruptcy Court").

4.      On June 5, 2007, the Bankruptcy Court entered its Findings of Fact, Conclusions

of Law, and Order Confirming the Second Amended Plan (the "Plan") of Reorganization of the

Debtor Proposed by the Debtor and Sponsored by RMC Mortgage Holdings, LLC, Dated June 5,

2007 (the "Confirmation Order") confirming the Plan.

5.      On June 14, 2007, the Appellants filed an appeal to the Confirmation Order (the

"Appeal"), and on July 9, 2007, the Bankruptcy Court transmitted the record of the Appeal to the

United States District Court for the District of Delaware.

6.      Pursuant to the Standing Order of the Court dated July 23, 2004, the Appeal was

referred to the Appellate Mediation Panel, and Connor Bifferato, Esquire was appointed as

mediator (the "Mediator").

7.      The Parties initially agreed to stay mediation through October 31, 2007, and

submitted a stipulation to the Court reflecting this agreement and requesting the stay, which the

Court approved on September 26, 2007.  Thereafter, the Parties conferred and agreed to further

stipulations extending the stay, all of which were approved by the Court.

8.      Pursuant to the Court's order approving the Parties' latest request for a stipulation

extending the stay, the stay is currently set to expire on July 18, 2008. The Court noted on the

order that no further stays would be granted and that the Parties were to submit a report on the

status of the Appeal on or before August 29, 2008. [Docket No. 13].

9.      After expending substantial efforts to amicably resolve *inter alia* the matters which are the subject of this Appeal, on July 3, 3008 the Parties filed with the Bankruptcy Court a Motion Pursuant to Bankruptcy Rule 9019 to Approve a Stipulation of Settlement Resolving Claims (the "9019 Motion"), seeking approval of the Global Settlement. A copy of the 9019 Motion is attached hereto as Exhibit A. The Parties are unaware of any opposition to the 9019 Motion and believe it will be approved on or before the July 30th hearing.

### RELIEF REQUESTED

10.     The Trust respectfully requests this Court to enter an order enlarging the time period staying mediation until thirty (30) days after the Bankruptcy Court's order approving the 9019 Motion becomes final.

### BASIS FOR RELIEF

11.     Bankruptcy Rule 8011 provides in pertinent part that "motions for procedural orders, including any motion under Rule 9006, may be acted on at any time, without awaiting a response thereto and without hearing. Any party adversely affected by such action may move for reconsideration, vacation, or modification of the action." Fed. R. Bankr. P. 8011(b).

12.     Bankruptcy Rule 9006 provides, in relevant part:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by an order of the court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order.

Fed. R. Bankr. P. 9006(b).

13.     As mentioned above, approval of the Global Settlement will not only pave the way for final distributions in the Debtor's bankruptcy case and maximize distributions to

creditors, it will moot this Appeal.  Pursuant to the Global Settlement, the Appellants will withdraw the Appeal once the order approving the 9019 Motion becomes final, which the Parties expect to occur in early August.

14.    Without a further extension of the stay of mediation, the Trust will be forced to incur the expense of preparing a mediation statement on issues that are likely to be resolved in the near term.  The time and expense of preparing the mediation statement will reduce any recovery to the Debtor's creditors.

15.    The Parties and the Mediator agree that a short continuance of the stay of mediation is warranted given the recent development of a Global Settlement, and that all Parties will be prejudiced if forced to continue with the mediation process.

16.    Accordingly, the Trust respectfully requests an order further extending the existing stay of the appellate mediation process pending Bankruptcy Court approval of the Global Settlement.

WHEREFORE, the Trust respectfully requests this Court to enter an order, substantially in the form attached hereto as Exhibit B, enlarging the time period staying mediation until thirty (30) days after the Bankruptcy Court's order approving the 9019 Motion becomes final, and grant such other and further relief as may be just and proper.

Dated:  July 16, 2008
       Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Richard S. Cobb (No. 3157)
Kerri K. Mumford (No. 4186)
Mona A. Parikh (No. 4901)
919 Market Street, Suite 600
Wilmington, Delaware  19801
Telephone:  (302) 467-4400
Facsimile:  (302) 467-4450

-and-

Mark S. Indelicato
Mark T. Power
Janine M. Cerbone
**HAHN & HESSEN LLP**
488 Madison Avenue
New York, New York 10022
Telephone:  (212) 478-7200
Facsimile:  (212) 478-7400

*Co-Counsel to the Liquidating Trust of
ResMAE Mortgage Corporation*

.

6

# **EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LIQUIDATING TRUST OF RESMAE MORTGAGE CORPORATION, f/k/a RESMAE MORTGAGE CORPORATION, | Case No. 07-10177 (KJC) |
| | **Hearing Date: July 30, 2008, 3:30 p.m. (ET)**<br>**Objection Deadline: July 23, 2008, 4:00 p.m. (ET)** |
| Debtor. | |

## NOTICE OF MOTION

TO:    The Office of the United States Trustee for the District of Delaware; Counsel to each of the Claimants; the Oversight Committee; and all other parties on the Post Effective Date Service List.

The Liquidating Trust of ResMAE Mortgage Corporation has filed the attached **Motion Pursuant to Bankruptcy Rule 9019 to Approve a Stipulation of Settlement Resolving Claims** (the "Motion").

Objections, if any, to the relief requested in the Motion must be filed with the United States Bankruptcy Court, 824 N. Market Street, 3rd Floor, Wilmington, Delaware 19801, on or before **July 23, 2008 at 4:00 p.m. (ET).**

At the same time, you must also serve a copy of the objection upon the undersigned counsel so as to be **received no later than 4:00 p.m. (ET) on July 23, 2008.**

A HEARING TO CONSIDER THE RELIEF REQUESTED IN THE MOTION WILL BE HELD **ON JULY 30, 2008 AT 3:30 P.M. (ET)** BEFORE THE HONORABLE KEVIN J. CAREY, UNITED STATES BANKRUPTCY COURT JUDGE, UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE, 824 N. MARKET STREET, 5TH FLOOR, COURTROOM #5, WILMINGTON, DELAWARE 19801.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

Dated: July 3, 2008
      Wilmington, Delaware

**LANDIS RATH & COBB LLP**

Richard S. Cobb (No. 3157)
Kerri K. Mumford (No. 4186)
Mona A. Parikh (No. 4901)
919 Market Street, Suite 600
Wilmington, Delaware 19801
Telephone: (302) 467-4400
Facsimile: (302) 467-4450

-and-

Mark S. Indelicato
Mark T. Power
Janine M. Cerbone
**HAHN & HESSEN LLP**
488 Madison Avenue
New York, New York 10022
Telephone: (212) 478-7200
Facsimile: (212) 478-7400

*Co-Counsel to the Liquidating Trust of
ResMAE Mortgage Corporation*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LIQUIDATING TRUST OF RESMAE MORTGAGE CORPORATION, f/k/a RESMAE MORTGAGE CORPORATION, | Case No. 07-10177 (KJC) |
| | **Hearing Date: July 30, 2008, 3:30 p.m. (ET)** <br> **Objections Due: July 23, 2008, 4:00 p.m. (ET)** |
| Debtor. | |

## MOTION PURSUANT TO BANKRUPTCY RULE 9019 TO APPROVE A STIPULATION OF SETTLEMENT RESOLVING CLAIMS

The Liquidating Trust of ResMAE Mortgage Corporation (the "Trust"), by its undersigned co-counsel, Hahn & Hessen LLP and Landis Rath & Cobb LLP, hereby moves this Court (the "Motion") pursuant to section 105(a) of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order approving the stipulation of settlement (the "Stipulation") entered into by the Trust and the parties listed on Exhibit A annexed to the Stipulation (the "Claimants", and collectively, with the Trust, the "Parties"). A copy of the Stipulation is attached hereto as Exhibit A. In support of the Motion, the Trust hereby represents as follows:

### JURISDICTION

1.      This Court has jurisdiction over these cases and this Motion pursuant to 28 U.S.C. §§ 157 and 1334(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a). The statutory predicates for relief sought herein are section 105 of the Bankruptcy Code and Bankruptcy Rule 9019.

## GENERAL BACKGROUND

2.     On February 12, 2007 (the "Petition Date"), ResMAE Mortgage Corporation (the "Debtor"), filed a voluntary petition under chapter 11 of title 11 the United States Code (the "Bankruptcy Code"), 11 U.S.C. §§ 101-1330 in the United States Bankruptcy Court for the District of Delaware (the "Court").

3.     On February 12, 2007, the Debtor filed with the Court its Schedules of Assets and Liabilities (as amended from time to time, the "Schedules").

4.     By order dated March 26, 2007 (the "Bar Date Order"), the Court established April 30, 2007 at 5:00 p.m. (prevailing Pacific Time) as the last date and time for the filing of proofs of claim in this chapter 11 case (the "Bar Date").

5.     On June 5, 2007, the Court entered the Findings of Fact, Conclusions of Law and Order under 11 U.S.C. §§ 1129(a) and (b) and Fed. R. Bankr. P. 3020 Confirming the Second Amended Plan of Reorganization of the Debtor Proposed by the Debtor and Sponsored by RMC Mortgage Holdings LLC Dated June 5, 2007 (the "Confirmation Order").

6.     On June 15, 2007 (the "Effective Date"), the Second Amended Plan of Reorganization of the Debtor Proposed by the Debtor and Sponsored by RMC Mortgage Holdings LLC Dated June 5, 2007 (as supplemented, modified, or amended, the "Plan") became effective.

7.     Pursuant to the Plan, on the Effective Date, the Trust was created and the Declaration of Trust, Estate Administration and Liquidating Trust Agreement (the "Trust Agreement") was executed appointing Alan M. Jacobs as Liquidating Trustee of the Trust (the "Trustee").

2

8.    Pursuant to Section 3.4 of the Trust Agreement, as of the Effective Date, the exclusive right to object to the allowance of any claim was reserved by the Trust and the Trustee was given the authority and power to file objections regarding the allowance and disallowance of claims.

## THE CLAIMS

9.    On or about July 11, 2007, DB Structured Products Inc. ("DBSP") filed claim number 234 (the "DB Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount of not less than $55,841,737.13 arising out of that certain Master Repurchase Agreement dated as of July 26, 2005 (as amended, supplemented and otherwise modified from time to time) and that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of November 1, 2006 (as amended, supplemented and otherwise modified from time to time).  The DB Filed Claim amends and supersedes one or more previously timely filed claims.

10.    DBSP is listed on the Debtors' schedule F as having an unliquidated, contingent and disputed unsecured claim in the amount of zero dollars (the "DBSP Scheduled Claim," together with the DBSP Filed Claim, the "DBSP Claims").

11.    On or about July 11, 2007, Aspen Funding Corp. ("Aspen") filed claim number 235 (the "Aspen Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount of not less than $55,841,737.13 arising out of that certain Master Repurchase Agreement dated as of July 26, 2005 (as amended, supplemented and otherwise modified from time to time) and that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of November 1, 2006 (as amended, supplemented and otherwise modified from time to time). The Aspen Filed Claim amends and supersedes one or more

596.002-21015.DOC

previously timely filed claims.

12.    Aspen is listed on the Debtors' schedule D as having a claim in the amount of zero dollars (the "Aspen Scheduled Claim," together with the Aspen Filed Claim, the "Aspen Claims").

13.    On or about July 11, 2007, Newport Funding Corp. ("Newport") filed claim number 236 (the "Newport Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount of not less than $55,841,737.13 arising out of that certain Master Repurchase Agreement dated as of July 26, 2005 (as amended, supplemented and otherwise modified from time to time) and that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of November 1, 2006 (as amended, supplemented and otherwise modified from time to time). The Newport Filed Claim amends and supersedes one or more previously timely filed claims.

14.    Aspen and Newport are affiliates of DBSP (collectively, the "DBSP Entities")

15.    On or about April 24, 2007, Lehman Brothers Bank FSB ("Lehman") filed claim number 128 (the "Lehman Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount of not less than $20,727,715.28 arising out of that certain Second Amended and Restated Master Repurchase Agreement Governing Purchases and Sales of Mortgage Loans, dated December 21, 2005 (as amended).

16.    Lehman is listed on the Debtors' schedule F as having an unliquidated, contingent and disputed unsecured claim in the amount of zero dollars (the "Lehman Scheduled Claim," together with the Lehman Filed Claim, the "Lehman Claims").

17.    On or about April 2, 2008, Aurora Loan Services LLC ("Aurora") filed claim number 253 (the "Aurora Filed Claim"), which is alleged to be a secured claim seeking an

4

unliquidated amount of not less than $4,000,248.78 arising from the Debtor's breach of representations and warranties in respect of mortgage loans it originated and sold to various entities for which Aurora is the master servicer. The Aurora Filed Claim amends and supersedes one or more previously filed claims.

18.     Aurora is an affiliate of Lehman (together, the "Lehman Entities").

19.     On or about April 30, 2007, Barclays Bank PLC, individually and as agent for buyers ("Barclays"), filed claim number 177 (the "Barclays Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount of not less than $31,809,283.00 arising out of that certain Master Repurchase Agreement dated as of July 25, 2006 and certain related custodial agreements and other transactional documents (as amended from time to time).

20.     Barclays is listed on the Debtors' schedule F as having an unliquidated, contingent and disputed unsecured claim in the amount of zero dollars (the "Barclays Scheduled Claim," together with the Barclays Filed Claim, the "Barclays Claims").

21.     On or about April 27, 2007, JPMorganChase Bank NA ("JPMorganChase") filed claim number 146 (the "JPMorganChase Filed Claim"), which is alleged to be a contingent and general unsecured claim seeking an unliquidated amount arising out of that certain Master Loan Repurchase Agreement dated May 31, 2006 and that certain Mortgage Loan Sale and Interim Servicing Agreement dated as of December 1, 2005.

22.     JPMorganChase is listed on the Debtors' schedule F as having a general unsecured claim in the amount of $39,324.00 (the "JPMorganChase Scheduled Claim," together with the JPMorganChase Filed Claim, the "JPMorganChase Claims").

23.     On or about April 27, 2007, Nomura Credit & Capital Inc. and its affiliates ("Nomura") filed claim number 144 (the "Nomura Filed Claim"), which is alleged to be an

unsecured claim seeking an unliquidated amount of not less than $1,239,427,168.30 arising out of that certain letter agreement setting forth the master terms for mortgage loan purchases dated October 1, 2006, that certain Master Mortgage Loan Purchase Agreement dated as of October 1, 2006 and two Pool Summary and Trade Confirmations, one dated as of August 10, 2006 and one dated as of August 24, 2006.

24.     Nomura is listed on the Debtors' schedule D a having an unliquidated, contingent and disputed secured claim in the amount of zero dollars (the "Nomura Scheduled Claim," together with the Nomura Filed Claim, the "Nomura Claims").

25.     On or about April 27, 2007, Merrill Lynch Bank USA ("ML Bank") filed claim number 187 (the "ML Bank Filed Claim"), which is alleged to be a general unsecured and/or an unsecured priority claim seeking an unliquidated amount of not less than $11,100,000.00 arising out of that certain Master Repurchase Agreement dated as of March 7, 2005 (as amended from time to time) and certain related agreements.

26.     ML Bank is listed on the Debtors' schedule F as having an unliquidated, contingent and disputed unsecured claim in the amount of zero dollars (the "ML Bank Scheduled Claim," together with the ML Bank Filed Claim, the "ML Bank Claims").

27.     On or about April 27, 2007, Merrill Lynch Funding Corp. ("ML Funding") filed claim number 152 (the "ML Funding Filed Claim"), which is alleged to be an unsecured, secured and/or priority claim seeking an unliquidated amount arising out of that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of January 1, 2006 (as amended from time to time) and certain related agreements.

28.     On or about April 27, 2007, Merrill Lynch Mortgage Lending Inc. ("ML Lending") filed claim number 151 (the "ML Lending Filed Claim"), which is alleged to be an

6

unsecured, secured and/or priority claim seeking an unliquidated amount arising out of that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of January 1, 2006 (as amended from time to time) and certain related agreements.

29.    On or about April 27, 2007, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM1 ("ML Trust 1") filed claim number 190 (the "ML Trust 1 Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount arising out of that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of January 1, 2006 (as amended from time to time) and certain related agreements.

30.    On or about April 27, 2007, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM2 ("ML Trust 2") filed claim number 150 (the "ML Trust 2 Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount arising out of that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of January 1, 2006 (as amended from time to time) and certain related agreements.

31.    On or about April 27, 2007, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM3 ("ML Trust 3") filed claim number 148 (the "ML Trust 3 Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount arising out of that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of January 1, 2006 (as amended from time to time) and certain related agreements.

32.    On or about April 27, 2007, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM4 ("ML Trust 4") filed claim number 149 (the

7

"ML Trust 4 Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount arising out of that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of January 1, 2006 (as amended from time to time) and certain related agreements.

33.    On or about April 27, 2007, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM5 ("ML Trust 5" and, collectively, with ML Trust 1, ML Trust 2 ML Trust 3 and ML Trust 4, the "ML Trusts") filed claim number 147 (the "ML Trust 5 Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount arising out of that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of January 1, 2006 (as amended from time to time) and certain related agreements.

34.    ML Funding and ML Lending are affiliates of ML Bank and ML Lending is the sponsor of the ML Trust 1, ML Trust 2, ML Trust 3, ML Trust 4, and ML Trust 5 (collectively, the "ML Entities"),

## RELIEF REQUESTED

35.    The Trust requests the entry of an Order, substantially in the form attached hereto as Exhibit B, approving the Stipulation. The salient terms of the Stipulation provide as follows:[1]

> i.    In full and final resolution of the DBSP Claims, the Aspen Claims, the Newport Filed Claim, and any and all other claims filed by, or scheduled on behalf of the DBSP Entities, whether secured, administrative, priority, or general unsecured, the DBSP Entities shall have a single allowed unsecured claim in the aggregate amount of ten million dollars ($10,000,000.00) (the "Allowed DBSP Claim"), which shall be treated as an Allowed Claim in Class 3 as defined in the Plan.

---

[1]  The following description of certain terms of the Stipulation is intended for the convenience of the Parties and is qualified in all respects by the language of the Stipulation.

ii.   In full and final resolution of the Lehman Claims, the Aurora
      Filed Claim, and any and all other claims filed by, or scheduled
      on behalf of, the Lehman Entities, whether secured,
      administrative, priority, or general unsecured, the Lehman
      Entities shall have a single allowed unsecured claim in the
      amount of ten million dollars ($10,000,000.00) (the "Allowed
      Lehman Claim"), which shall be treated as an Allowed Claim in
      Class 3 as defined in the Plan.

iii.  In full and final resolution of the Barclays Claims and any and
      all other claims filed by, or scheduled on behalf of, Barclays,
      whether secured, administrative, priority, or general unsecured,
      Barclays shall have a single allowed unsecured claim in the
      amount of ten million dollars ($10,000,000.00) (the "Allowed
      Barclays Claim"), which shall be treated as an Allowed Claim
      in Class 3 as defined in the Plan.

iv.   In full and final resolution of the JPMorganChase Claims and
      any and all other claims filed by, or scheduled on behalf of,
      JPMorganChase, whether secured, administrative, priority, or
      general unsecured, JPMorganChase shall have a single allowed
      unsecured claim in the amount of ten million dollars
      ($10,000,000.00) (the "Allowed JPMorganChase Claim"),
      which shall be treated as an Allowed Claim in Class 3 as
      defined in the Plan.

v.    In full and final resolution of the Nomura Claims and any and
      all other claims filed by, or scheduled on behalf of, Nomura,
      whether secured, administrative, priority, or general unsecured,
      Nomura shall have a single allowed unsecured claim in the
      amount of ten million dollars ($10,000,000.00) (the "Allowed
      Nomura Claim"), which shall be treated as an Allowed Claim in
      Class 3 as defined in the Plan.

vi.   In full and final resolution of the ML Bank Claims, the ML
      Funding Filed Claim, the ML Lending Filed Claim, the ML
      Trust 1 Filed Claim, the ML Trust 2 Filed Claim, the ML Trust
      3 Filed Claim, the ML Trust 4 Filed Claim, the ML Trust 5
      Filed Claim and any and all other claims filed by, or scheduled
      on behalf of, the ML Entities, whether secured, administrative,
      priority, or general unsecured, the ML Entities shall have a
      single allowed unsecured claim in the amount of ten million
      dollars ($10,000,000.00) (the "Allowed ML Claim,"
      collectively with the Allowed DBSP Claim, the Allowed
      Lehman Claim, the Allowed Barclays Claim, the Allowed
      JPMorganChase Claim, and the Allowed Nomura Claim, the

"Allowed Claims", and individually each an "Allowed Claim"), which shall be treated as an Allowed Claim in Class 3 as defined in the Plan.

vii.    Any of the ML Trusts may withdraw its consent to the Stipulation if LaSalle Bank National Association ("LaSalle") as trustee for such ML Trust, delivers a written certification to the Trust on or before July 25, 2008 which certifies that fifty percent (50% to be measured in principal (or notional) amount outstanding) of the security holders of such ML Trust have directed LaSalle to withdraw from the Stipulation ("Certified Statement").

viii.   If either of the following conditions (the "Conditions") is not met then each Claimant shall be entitled to provide to the Trust and each of the other Claimants written notification (a "Notice of Withdrawal") of such Claimant's intent to withdraw its consent to this Stipulation: i) the Final Order shall have been entered by the Court on or before August 20, 2008 and ii) the Trustee shall have made a distribution equal to at least 10% on each Allowed Claim on or before September 30, 2008 (the "Initial Distribution").

## DISCUSSION

A.    *Legal Standard*

36.    Section 105 of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). Bankruptcy Rule 9019 provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).

37.    In order to minimize litigation and expedite the administration of a bankruptcy estate, "compromises are favored in bankruptcy." *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996); *see also In re Coram Healthcare, Inc.*, 315 B.R. 321, 329 (Bankr. D. Del. 2004). Pursuant to Bankruptcy Rule 9019, "the authority to approve a compromise settlement is within the sound discretion of the bankruptcy court." *In re Key3Media Group, Inc.*, Case No. 03-10323, 2005

10

Bankr. LEXIS 2606, at *9 (Bankr. D. Del. October 7, 2005)[2]; *see In re Louise's, Inc.*, 211 B.R. 798, 801 (D. Del. 1997). When exercising such discretion, the bankruptcy court must determine whether the compromise is "fair, reasonable, and in the best interests [sic] of the estate." *Key3Media Group*, 2005 Bankr. LEXIS 2606, at *9; *see also In re RFE Industries, Inc.*, 283 F.3d 159, 165 (3d Cir. 2002); *Louise's, Inc.*, 211 B.R. at 801.

38.     The bankruptcy court is not required to determine that the proposed settlement is the best possible compromise. *Key3Media Group*, 2005 Bankr. LEXIS 2606, at *11 (citing *Coram*, 315 B.R. at 329). Rather, the settlement should be approved as long as it "falls within the reasonable range of litigation possibilities." *Coram*, 315 B.R. at 330; *see also Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir.), *cert. denied*, 464 U.S. 822 (1983) (Settlement should be approved provided it does not fall below the lowest point in the range of reasonableness.). In this respect, it is not necessary for the court to consider all information utilized in resolving the factual dispute, nor is it necessary for the bankruptcy court to "conclusively determine claims subject to a compromise." *Key3Media Group*, 2005 Bankr. LEXIS 2606, at *10.

39.     Courts should consider the following four factors when determining whether a settlement is in the best interests of the estate: (1) the probability of success in the litigation; (2) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attendant thereto; (3) the difficulties, if any, to be encountered in the matter of collection; and (4) the paramount interest of the creditors and a proper deference to their reasonable opinions. *See e.g., Protective Comm. for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).

---

[2] A copy of the *Key3Media Group* decision is attached hereto as *Exhibit C*.

11

*B.*      *The Stipulation is in the Best Interest of the Estate*

40.      In the present case, the Parties engaged in extensive discussions and the Stipulation was negotiated in good faith and at arms-length among the Parties and their respective professionals. The Parties believe that in the aggregate, the Allowed Claims are substantially lower than the claims that the Claimants would collectively be entitled to if the Trust was to examine and analyze any and all claims asserted by the Claimants (collectively, the "Claims") individually. The Claimants nevertheless agreed to the Stipulation based on two basic factors. First, the Parties recognized that an effort to specifically determine the merits of any of the Claims would involve (i) unduly burdensome and costly document and information production causing a drain on the resources of each of the Claimants, (ii) a thorough review by the Trustee of the documents and information produced by each of the Claimants, causing a drain on the resources of the estate, and (iii) a very complex analysis by the Trustee likely followed by months of negotiations between the Trustee and each of the Claimants, draining the resources of both the Claimants and the estate.

41.      Second, the Parties determined that collectively the Claimants comprise in excess of 90% of the claims pool and, therefore, agreeing to accept smaller claims than such Claimants may otherwise be entitled to would essentially have little to no impact on the Claimants as they simply would be getting a larger distribution on smaller claims as opposed to a smaller distribution on larger claims. In fact, since the Claimants represent such a significant portion of the Class 3 claimants, they would be required to fund not only their own costs in prosecuting any such litigation but the Trust's costs as well since it would reduce the amount otherwise available to distribute to them. Moreover, the only impact the settlement could have on other unsecured claimants would be to provide a greater distribution to such claimants due to a decreased creditor

12

pool. Accordingly, the settlement is fair, reasonable, and in the best interests of the estate.

42.    As to the first *Martin* factor, the probability of success in litigation regarding the Claims is uncertain because of the fact-intensive nature of the dispute over the Trust's obligations to the Claimants with respect to each of the Claims. As to the second *Martin* factor, because litigation would be factually complex and likely require extensive discovery, the costs of litigating this matter would likely outweigh any potential benefit of litigation. As to the third *Martin* factor, there is no difficulty in collection.

43.    Finally, as to the fourth *Martin* factor, at this stage in this case, the paramount interest of creditors is certainty and ensuring that distributions be made expeditiously. Accordingly, the resolution and settlement of the Claims, which will result in the allowance of reduced general unsecured claims for the Claimants in exchange for the release of filed claims asserted in unliquidated amounts anticipated to be far in excess of the allowed amounts, plus additional fees and costs inherent in litigating the Claims, fits squarely within the *Martin* factors.

44.    The Trust believes that this settlement represents a sensible compromise of these claims, and that the settlement is in the best interest of the Trust and the Trust beneficiaries. *In re Marvel Entm't Group, Inc.*, 222 B.R. 243, 249 (Bankr. D. Del. 1998).

45.    For the foregoing reasons, the Trust respectfully submits that the proposed settlement is within the reasonable range of litigation possibilities and approval of the Stipulation is justified and appropriate.

## NOTICE

46.    As required by the Plan and Confirmation Order, notice of this Motion has been provided to: (1) the Office of the United States Trustee, (2) Counsel to each of the Claimants, (3) the Oversight Committee, and (4) other parties entitled to notice. The Trust submits that no

other or further notice is required.

24.    No previous application for the relief sought herein has been made to this or any other Court.

**WHEREFORE,** the Trust respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit B, approving the Stipulation, and grant such other and further relief as may be just and proper.

Dated:  July 3, 2008
         Wilmington, Delaware

                                        **LANDIS RATH & COBB LLP**

                                        _(signature)_

                                        Richard S. Cobb (No. 3157)
                                        Kerri K. Mumford (No. 4186)
                                        919 Market Street, Suite 600
                                        Wilmington, DE  19801
                                        Telephone:  (302) 467-4400
                                        Facsimile:  (302) 467-4450

                                                -and-

                                        Mark S. Indelicato
                                        Mark T. Power
                                        Janine M. Cerbone
                                        **HAHN & HESSEN LLP**
                                        488 Madison Avenue
                                        New York, New York 10022
                                        Telephone:  (212) 478-7200
                                        Facsimile:  (212) 478-7400

                                        _Co-Counsel to the Liquidating Trust of_
                                        _ResMAE Mortgage Corporation_

14

# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

IN RE:

LIQUIDATING TRUST OF RESMAE
MORTGAGE CORPORATION, a Delaware
Corporation,

Debtor.

Chapter 11

Case No. 07-10177 (KJC)

## STIPULATION OF SETTLEMENT RESOLVING CLAIMS

This Stipulation of Settlement Resolving Claims (the "Stipulation") is entered into by and among the Liquidating Trust of ResMAE Mortgage Corporation (the "Trust") and the Parties who are listed on Exhibit A annexed hereto and who are signatories hereto (the "Claimants", collectively, with the Trust, the "Parties"):

### RECITALS

As and for the Recitals to this Stipulation, the Parties assert the following:

A.    On February 12, 2007, ResMAE Mortgage Corporation (the "Debtor"), filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), 11 U.S.C. §§ 101-1330 in the United States Bankruptcy Court for the District of Delaware (the "Court").

B.    On February 12, 2007, the Debtor filed with the Court its Schedules of Assets and Liabilities (as amended from time to time, the "Schedules").

C.      By order dated March 26, 2007 (the "Bar Date Order"), the Court established April 30, 2007 at 5:00 p.m. (prevailing Pacific Time) as the last date and time for the filing of proofs of claim in this chapter 11 case (the "Bar Date").

D.      On or about July 11, 2007, DB Structured Products Inc. ("DBSP") filed claim number 234 (the "DB Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount of not less than $55,841,737.13 arising out of that certain Master Repurchase Agreement dated as of July 26, 2005 (as amended, supplemented and otherwise modified from time to time) and that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of November 1, 2006 (as amended, supplemented and otherwise modified from time to time).  The DB Filed Claim amends and supercedes one or more previously timely filed claims.

E.      DBSP is listed on the Debtors' schedule F as having an unliquidated, contingent and disputed unsecured claim in the amount of zero dollars (the "DBSP Scheduled Claim", together with the DBSP Filed Claim, the "DBSP Claims").

F.      On or about July 11, 2007, Aspen Funding Corp. ("Aspen") filed claim number 235 (the "Aspen Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount of not less than $55,841,737.13 arising out of that certain Master Repurchase Agreement dated as of July 26, 2005 (as amended, supplemented and otherwise modified from time to time) and that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of November 1, 2006 (as amended, supplemented and otherwise modified from time to time). The Aspen Filed Claim amends and supercedes one or more previously timely filed claims.

2

G.    Aspen is listed on the Debtors' schedule D as having a claim in the amount of zero dollars (the "Aspen Scheduled Claim", together with the Aspen Filed Claim, the "Aspen Claims").

H.    On or about July 11, 2007, Newport Funding Corp. ("Newport") filed claim number 236 (the "Newport Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount of not less than $55,841,737.13 arising out of that certain Master Repurchase Agreement dated as of July 26, 2005 (as amended, supplemented and otherwise modified from time to time) and that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of November 1, 2006 (as amended, supplemented and otherwise modified from time to time). The Newport Filed Claim amends and supercedes one or more previously timely filed claims.

I.    Aspen and Newport are affiliates of DBSP (collectively, the "DBSP Entities")

J.    On or about April 24, 2007, Lehman Brothers Bank FSB ("Lehman") filed claim number 128 (the "Lehman Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount of not less than $20,727,715.28 arising out of that certain Second Amended and Restated Master Repurchase Agreement Governing Purchases and Sales of Mortgage Loans, dated December 21, 2005 (as amended).

K.    Lehman is listed on the Debtors' schedule F as having an unliquidated, contingent and disputed unsecured claim in the amount of zero dollars (the "Lehman Scheduled Claim", together with the Lehman Filed Claim, the "Lehman Claims").

L.    On or about April 2, 2008, Aurora Loan Services LLC ("Aurora") filed claim number 253 (the "Aurora Filed Claim"), which is alleged to be a secured claim seeking an unliquidated amount of not less than $4,000,248.78 arising from the Debtor's breach of

3

representations and warranties in respect of mortgage loans it originated and sold to various entities for which Aurora is the master servicer. The Aurora Filed Claim amends and supercedes one or more previously filed claims.

      M.     Aurora is an affiliate of Lehman (together, the "Lehman Entities").

      N.     On or about April 30, 2007, Barclays Bank PLC, individually and as agent for buyers ("Barclays"), filed claim number 177 (the "Barclays Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount of not less than $31,809,283.00 arising out of that certain Master Repurchase Agreement dated as of July 25, 2006 and certain related custodial agreements and other transactional documents (as amended from time to time).

      O.     Barclays is listed on the Debtors' schedule F as having an unliquidated, contingent and disputed unsecured claim in the amount of zero dollars (the "Barclays Scheduled Claim", together with the Barclays Filed Claim, the "Barclays Claims").

      P.     On or about April 27, 2007, JPMorganChase Bank NA ("JPMorganChase") filed claim number 146 (the "JPMorganChase Filed Claim"), which is alleged to be a contingent and general unsecured claim seeking an unliquidated amount arising out of that certain Master Loan Repurchase Agreement dated May 31, 2006 and that certain Mortgage Loan Sale and Interim Servicing Agreement dated as of December 1, 2005.

      Q.     JPMorganChase is listed on the Debtors' schedule F as having a general unsecured claim in the amount of $39,324.00 (the "JPMorganChase Scheduled Claim", together with the JPMorganChase Filed Claim, the "JPMorganChase Claims").

      R.     On or about April 27, 2007, Nomura Credit & Capital Inc. and its affiliates ("Nomura") filed claim number 144 (the "Nomura Filed Claim"), which is alleged to be an unsecured claim seeking an unliquidated amount of not less than $1,239,427,168.30 arising out

of that certain letter agreement setting forth the master terms for mortgage loan purchases dated October 1, 2006, that certain Master Mortgage Loan Purchase Agreement dated as of October 1, 2006 and two Pool Summary and Trade Confirmations, one dated as of August 10, 2006 and one dated as of August 24, 2006.

      S.     Nomura is listed on the Debtors' schedule D a having an unliquidated, contingent and disputed secured claim in the amount of zero dollars (the "Nomura Scheduled Claim", together with the Nomura Filed Claim, the "Nomura Claims").

      T.     On or about April 27, 2007, Merrill Lynch Bank USA ("ML Bank") filed claim number 187 (the "ML Bank Filed Claim"), which is alleged to be a general unsecured and/or an unsecured priority claim seeking an unliquidated amount of not less than $11,100,000.00 arising out of that certain Master Repurchase Agreement dated as of March 7, 2005 (as amended from time to time) and certain related agreements.

      U.     ML Bank is listed on the Debtors' schedule F as having an unliquidated, contingent and disputed unsecured claim in the amount of zero dollars (the "ML Bank Scheduled Claim", together with the ML Bank Filed Claim, the "ML Bank Claims").

      V.     On or about April 27, 2007, Merrill Lynch Funding Corp. ("ML Funding") filed claim number 152 (the "ML Funding Filed Claim"), which is alleged to be an unsecured, secured and/or priority claim seeking an unliquidated amount arising out of that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of January 1, 2006 (as amended from time to time) and certain related agreements.

      W.     On or about April 27, 2007, Merrill Lynch Mortgage Lending Inc. ("ML Lending") filed claim number 151 (the "ML Lending Filed Claim"), which is alleged to be an unsecured, secured and/or priority claim seeking an unliquidated amount arising out of that

certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of January 1, 2006 (as amended from time to time) and certain related agreements.

X.      On or about April 27, 2007, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM1 ("ML Trust 1") filed claim number 190 (the "ML Trust 1 Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount arising out of that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of January 1, 2006 (as amended from time to time) and certain related agreements.

Y.      On or about April 27, 2007, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM2 ("ML Trust 2") filed claim number 150 (the "ML Trust 2 Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount arising out of that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of January 1, 2006 (as amended from time to time) and certain related agreements.

Z.      On or about April 27, 2007, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM3 ("ML Trust 3") filed claim number 148 (the "ML Trust 3 Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount arising out of that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of January 1, 2006 (as amended from time to time) and certain related agreements.

AA.     On or about April 27, 2007, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM4 ("ML Trust 4") filed claim number 149 (the "ML Trust 4 Filed Claim"), which is alleged to be a general unsecured claim seeking an

unliquidated amount arising out of that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of January 1, 2006 (as amended from time to time) and certain related agreements.

BB.    On or about April 27, 2007, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM5 ("ML Trust 5" and, collectively, with ML Trust 1, ML Trust 2 ML Trust 3 and ML Trust 4, the "ML Trusts") filed claim number 147 (the "ML Trust 5 Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount arising out of that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of January 1, 2006 (as amended from time to time) and certain related agreements.

CC.    ML Funding and ML Lending are affiliates of ML Bank and ML Lending is the sponsor of the ML Trust 1, ML Trust 2, ML Trust 3, ML Trust 4, and ML Trust 5 (collectively, the "ML Entities"),

DD.    On June 5, 2007, the Court entered the Findings of Fact, Conclusions of Law and Order under 11 U.S.C. §§ 1129(a) and (b) and Fed. R. Bankr. P. 3020 Confirming the Second Amended Plan of Reorganization of the Debtor Proposed by the Debtor and Sponsored by RMC Mortgage Holdings LLC Dated June 5, 2007 (the "Confirmation Order").

EE.    On June 15, 2007 (the "Effective Date"), the Second Amended Plan of Reorganization of the Debtor Proposed by the Debtor and Sponsored by RMC Mortgage Holdings LLC Dated June 5, 2007 (as supplemented, modified, or amended, the "Plan") became effective.

FF.    Pursuant to the Plan, on the Effective Date the Trust was created and the Declaration of Trust, Estate Administration and Liquidating Trust Agreement (the "Trust

Agreement") was executed appointing Alan M. Jacobs as Liquidating Trustee of the Trust (the "Trustee").

GG.    On the Effective Date, the Debtor transferred the Trust Property to the Trust in accordance with the Plan.

HH.    Pursuant to Section 3.4 of the Trust Agreement, as of the Effective Date, the exclusive right to object to the allowance of any claim was reserved by the Trust and the Trustee was given the authority and power to file objections regarding the allowance and disallowance of claims.

NOW, THEREFORE, in consideration of the promises and mutual covenants contained herein and other valuable consideration, the receipt of which is hereby acknowledged, it is stipulated and agreed by and among the Parties, as follows:

1.    The recitals set forth above are incorporated herein by reference.

2.    In full and final resolution of the DBSP Claims, the Aspen Claims, the Newport Filed Claim, and any and all other claims filed by, or scheduled on behalf of the DBSP Entities, whether secured, administrative, priority, or general unsecured, the DBSP Entities shall have a single allowed unsecured claim in the aggregate amount of ten million dollars ($10,000,000.00) (the "Allowed DBSP Claim"), which shall be treated as an Allowed Claim in Class 3 as defined in the Plan. Any distribution due to the DBSP Entities under the Plan shall be paid to DBSP; provided, however, DBSP, Aspen and Newport reserve the right to determine the appropriate allocation among DBSP, Aspen and Newport of any distributions received from the Trust on behalf of the Allowed DBSP Claim.

3.    In full and final resolution of the Lehman Claims, the Aurora Filed Claim, and any and all other claims filed by, or scheduled on behalf of, the Lehman Entities, whether

8

secured, administrative, priority, or general unsecured, the Lehman Entities shall have a single allowed unsecured claim in the amount of ten million dollars ($10,000,000.00) (the "Allowed Lehman Claim"), which shall be treated as an Allowed Claim in Class 3 as defined in the Plan. Any distribution due to the Lehman Entities under the Plan shall be paid to Lehman, provided, however, Lehman and Aurora reserve the right to determine the appropriate allocation between them of any distributions received from the Trust on behalf of the Allowed Lehman Claim.

4.      In full and final resolution of the Barclays Claims and any and all other claims filed by, or scheduled on behalf of, Barclays, whether secured, administrative, priority, or general unsecured, Barclays shall have a single allowed unsecured claim in the amount of ten million dollars ($10,000,000.00) (the "Allowed Barclays Claim"), which shall be treated as an Allowed Claim in Class 3 as defined in the Plan.

5.      In full and final resolution of the JPMorganChase Claims and any and all other claims filed by, or scheduled on behalf of, JPMorganChase, whether secured, administrative, priority, or general unsecured, JPMorganChase shall have a single allowed unsecured claim in the amount of ten million dollars ($10,000,000.00) (the "Allowed JPMorganChase Claim"), which shall be treated as an Allowed Claim in Class 3 as defined in the Plan.

6.      In full and final resolution of the Nomura Claims and any and all other claims filed by, or scheduled on behalf of, Nomura, whether secured, administrative, priority, or general unsecured, Nomura shall have a single allowed unsecured claim in the amount of ten million dollars ($10,000,000.00) (the "Allowed Nomura Claim"), which shall be treated as an Allowed Claim in Class 3 as defined in the Plan.

7.      In full and final resolution of the ML Bank Claims, the ML Funding Filed Claim, the ML Lending Filed Claim, the ML Trust 1 Filed Claim, the ML Trust 2 Filed Claim, the ML

Trust 3 Filed Claim, the ML Trust 4 Filed Claim, the ML Trust 5 Filed Claim and any and all other claims filed by, or scheduled on behalf of, the ML Entities, whether secured, administrative, priority, or general unsecured, the ML Entities shall have a single allowed unsecured claim in the amount of ten million dollars ($10,000,000.00) (the "Allowed ML Claim," collectively with the Allowed DBSP Claim, the Allowed Lehman Claim, the Allowed Barclays Claim, the Allowed JPMorganChase Claim, and the Allowed Nomura Claim, the "Allowed Claims", and individually each an "Allowed Claim"), which shall be treated as an Allowed Claim in Class 3 as defined in the Plan. Any distribution due to the ML Entities under the Plan shall be paid to ML Bank in trust for itself and the other ML Entities; provided, however, ML Bank, ML Funding, ML Lending, ML Trust 1, ML Trust 2, ML Trust 3, ML Trust 4, and ML Trust 5 reserve the right to determine the appropriate allocation among ML Bank, ML Funding, ML Lending, ML Trust 1, ML Trust 2, ML Trust 3, ML Trust 4, and ML Trust 5 of any distributions received by ML Bank from the Trust on behalf of the Allowed ML Claim. Any of the ML Trusts, however, may withdraw its consent to this Stipulation if LaSalle Bank National Association ("LaSalle") as trustee for such ML Trust, delivers a written certification to the Trust on or before July 25, 2008 which certifies that fifty percent (50% to be measured in principal (or notional) amount outstanding) of the security holders of such ML Trust have directed LaSalle to withdraw from this Stipulation ("Certified Statement").

8.     The Parties understand and acknowledge that this Stipulation is subject to approval by the Court and that this Stipulation shall not become final and binding upon the Parties until the entry by the Court or of an appellate court, where applicable, of an order approving this Stipulation (the "Final Order"). For purposes of this Stipulation, a "Final Order" means an order, the operation or effect of which has not been stayed, reversed or amended and as

to which the time to appeal or such review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

9.      If a Certified Statement is received by the Trust as set forth in paragraph 7 of this Stipulation or if this Stipulation is not approved by the Court or the Court's order is reversed by a higher court, the Stipulation shall be deemed null and void and all releases set forth in this Stipulation shall be deemed null and void. Furthermore, if this Stipulation is not approved by the Court or the Court's order approving this Stipulation is reversed by a higher court, the terms or statements contained in this Stipulation, any motion or motions filed seeking an order from the Court approving this Stipulation, and any correspondence related to the negotiation, drafting or approval of this Stipulation, shall not be argued or deemed to be an admission against any Party's interest in any litigation by and among the Parties.

10.     If either of the following conditions (the "Conditions") is not met then each Claimant shall be entitled to provide to the Trust and each of the other Claimants written notification (a "Notice of Withdrawal") of such Claimant's intent to withdraw its consent to this Stipulation: i) the Final Order shall have been entered by the Court on or before August 20, 2008 and ii) the Trustee shall have made a distribution equal to at least 10% on each Allowed Claim in accordance with paragraphs 2 through 7 herein on or before September 30, 2008 (the "Initial Distribution"). Upon receipt of a Notice of Withdrawal from one or more of the Claimants, the Trustee shall have five (5) business days to take any necessary steps to ensure entry of the Final Order and/or effectuate the Initial Distribution. If, after five (5) business days from the Trustee's receipt of a Notice of Withdrawal, the Final Order has not been entered by the Court or the Initial Distribution has not been made, this Stipulation shall be deemed null and void and all releases

11

set forth in this Stipulation shall be deemed null and void. The Trustee shall reasonable efforts to assure that the Conditions are met.

11.    Conditional upon the Trust's receipt of an executed copy of this Stipulation by all Parties, entry of the Final Order, and subject to the provisions of paragraph 10, the Trustee, on behalf of the Trust, and to the extent authorized and empowered, on behalf of the Debtor, and each of their respective predecessors, successors and assigns (collectively, the "Trust Releasing Parties") hereby releases, waives, discharges and relinquishes any and all claims, causes of action, damages, liabilities, demands, rights and losses of whatever kind and nature, known or unknown, past or present, existing before or as of the date of this Stipulation, of any nature whatsoever, whether in tort (including, without limitation, acts of active negligence), contract or any other theory of recovery in law, admiralty or equity, whether or not wrongful, whether for compensatory or punitive damages, equitable relief or otherwise, and whether now known or unknown, suspected or unsuspected, that any of the Trust Releasing Parties has or had against the Claimants and current and former officers and directors of the Claimants, which are based upon or arise out of or in connection with any matter, cause or thing existing at any time prior to the date hereof or anything done, omitted or suffered to be done at any time prior to the date hereof; provided, however, that nothing herein shall release any rights that the Trust has in or to the ResMAE Asset-Backed Pass-Through Certificates 2006-1, including, but not limited to, the Trust's rights in the Originator Reserve Account.

12.    Upon each Claimant's receipt of an executed copy of this Stipulation by all Parties, entry of the Final Order and subject to the provisions of paragraph 10, each Claimant hereby releases, waives, discharges and relinquishes any and all claims, causes of action, damages, liabilities, demands, rights and losses of whatever kind and nature, known or unknown,

12

past or present, existing before, or as of the date of this Stipulation, of any nature whatsoever, whether in tort (including, without limitation, acts of active negligence), contract or any other theory of recovery in law, admiralty or equity, whether or not wrongful, whether for compensatory or punitive damages, equitable relief or otherwise, and whether now known or unknown, suspected or unsuspected, that the Claimant have or had against the Trust Releasing Parties, which are based upon or arise out of or in connection with any matter, cause or thing existing at any time prior to the date hereof or anything done, omitted or suffered to be done or omitted at any time prior to the date hereof, including but not limited to any and all claims filed by, or scheduled on behalf of, such Claimant; provided, however, nothing in this paragraph shall release the Debtor, the Trust or the Liquidating Trustee from its obligation to make distributions with respect to the Allowed Claims.

13.    Each Party represents that it owns and has not assigned or otherwise transferred to any other person or entity any of such Party's rights and claims as are being altered or otherwise affected by this Stipulation.

14.    The Parties acknowledge that this Stipulation is a compromise of disputed claims and that no Party admits, and each expressly denies, any liability on its part.

15.    Each person signing this Stipulation represents and warrants that he/she has been duly authorized and has the requisite authority to execute and deliver this Stipulation on behalf of such Party and/or to bind his/her respective client(s) to the terms and conditions of this Stipulation.

16.    The Parties further declare that, in making this Stipulation, they rely entirely upon their own judgment, beliefs and interests and the advice of their counsel (for whose expense each

13

shall be solely responsible) and that they have had a reasonable period of time to consider this Stipulation.

17. The Parties agree that each Party has reviewed this Stipulation and that each fully understands and voluntarily accepts all the provisions contained in this Stipulation. The Parties further agree that this Stipulation was the product of negotiations between each of the Claimants and the Trust and that any rule of construction that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Stipulation.

18. The language of all parts of this Stipulation shall in all cases be construed as a whole, according to its fair meaning and not strictly for or against any of the Parties.

19. Should any immaterial provision of this Stipulation be declared or be determined by any court of competent jurisdiction to be illegal, invalid or unenforceable, the legality, validity and enforceability of the remaining parts, terms or provisions shall not be affected thereby and said illegal, unenforceable or invalid part, term or provision shall be deemed not to be a part of this Stipulation.

20. This Stipulation sets forth the entire agreement among the Parties and fully supercedes any and all prior agreements and understandings, written or oral, among the Parties pertaining to the subject matter hereof.

21. No modification of this Stipulation shall be binding or enforceable unless in writing and signed by each of the Parties.

22. This Stipulation shall be binding upon and inure to the benefit of the Parties, their respective heirs, executors, successors, administrators and assigns.

23. With respect to any action to enforce the terms and provisions of this Agreement, each of the Parties hereby irrevocably consents to the jurisdiction of the Court, while the

14

Bankruptcy Cases are pending in this Court, and otherwise the federal courts in Wilmington, Delaware and each of the Parties expressly waives any right to commence any such action in any other forum.

24.    This Stipulation may be executed in one or more counterparts, and signatures supplied by facsimile or other electronic means shall be deemed as if originals, and all of which together shall constitute one and the same instrument.

**AGREED:**

Dated: _____ July 1 _____, 2008          THE LIQUIDATING TRUST OF RESMAE
                                             MORTGAGE CORPORATION

                                             _____
                                             By: Alan M. Jacobs, Trustee


Dated: _____, 2008               DB STRUCTURED PRODUCTS INC.

                                             _____
                                             By:


Dated: _____, 2008               ASPEN FUNDING CORP.

                                             _____
                                             By:


Dated: _____, 2008               NEWPORT FUNDING CORP.

                                             _____
                                             By:


15

Bankruptcy Cases are pending in this Court, and otherwise the federal courts in Wilmington, Delaware and each of the Parties expressly waives any right to commence any such action in any other forum.

24.　　This Stipulation may be executed in one or more counterparts, and signatures supplied by facsimile or other electronic means shall be deemed as if originals, and all of which together shall constitute one and the same instrument.


**AGREED:**

Dated: _____, 2008

THE LIQUIDATING TRUST OF RESMAE
MORTGAGE CORPORATION

_____
By: Alan M. Jacobs, Trustee


Dated: _____, 2008

~~Vincent D. Amore~~

Dated: _____, 2008

DB STRUCTURED PRODUCTS INC.

_____
By: Glenn Minkoff

ASPEN FUNDING CORP.

_____
By:


Dated: _____, 2008

NEWPORT FUNDING CORP.

_____
By:

15

Bankruptcy Cases are pending in this Court, and otherwise the federal courts in Wilmington, Delaware and each of the Parties expressly waives any right to commence any such action in any other forum.

24.    This Stipulation may be executed in one or more counterparts, and signatures supplied by facsimile or other electronic means shall be deemed as if originals, and all of which together shall constitute one and the same instrument.

**AGREED:**

Dated: _____, 2008        THE LIQUIDATING TRUST OF RESMAE
                                       MORTGAGE CORPORATION


                                       _____
                                       By: Alan M. Jacobs, Trustee

Dated: _____, 2008        DB STRUCTURED PRODUCTS INC.


                                       _____
                                       By:

Dated: _____, 2008        ASPEN FUNDING CORP.

                                       _____
                                       By:   Doris J. Hearn, Vice President


Dated: _____, 2008        NEWPORT FUNDING CORP.

                                       _____
                                       By:   Doris J. Hearn, Vice President

15

Dated: _____, 2008          LEHMAN BROTHERS BANK FSB

                                        By: _____

Dated: _____, 2008          AURORA LOAN SERVICES LLC

                                        By: _____

Dated: _____, 2008          BARCLAYS BANK PLC,

                                        By: _____

Dated: _____, 2008          JPMORGANCHASE BANK NA

                                        By: _____

Dated: _____, 2008          NOMURA CREDIT & CAPITAL INC.

                                        By: _____

Dated: _____, 2008          MERRILL LYNCH BANK USA

                                        By: _____

16

Dated: _____, 2008        LEHMAN BROTHERS BANK FSB

                                       _____
                                       By:

Dated: _Jul_ _1st_____, 2008           AURORA LOAN SERVICES LLC

                                       _____
                                       By: Zachary Trump

Dated: _____, 2008         BARCLAYS BANK PLC,

                                       _____
                                       By:

Dated: _____, 2008         JPMORGANCHASE BANK NA

                                       _____
                                       By:

Dated: _____, 2008         NOMURA CREDIT & CAPITAL INC.

                                       _____
                                       By:

Dated: _____, 2008         MERRILL LYNCH BANK USA

                                       _____
                                       By:

Dated: _____, 2008          LEHMAN BROTHERS BANK FSB

                                         _____
                                         By:

Dated: _____, 2008          AURORA LOAN SERVICES LLC

                                         _____
                                         By:

Dated: _____, 2008          BARCLAYS BANK PLC,

                                         _____
                                         By:     ARTHUR J. OLSEN

Dated: _____, 2008          JPMORGANCHASE BANK NA

                                         _____
                                         By:

Dated: _____, 2008          NOMURA CREDIT & CAPITAL INC.

                                         _____
                                         By:

Dated: _____, 2008          MERRILL LYNCH BANK USA

                                         _____
                                         By:

16

Dated: _____, 2008          LEHMAN BROTHERS BANK FSB

                                       _____
                                       By:

Dated: _____, 2008          AURORA LOAN SERVICES LLC

                                       _____
                                       By:

Dated: _____, 2008          BARCLAYS BANK PLC,

                                       _____
                                       By:

Dated: _____, 2008          JPMORGANCHASE BANK NA

                                       _____
                                       By:     JOHN P. McDONAGH
                                               MANAGING DIRECTOR

Dated: _____, 2008          NOMURA CREDIT & CAPITAL INC.

                                       _____
                                       By:

Dated: _____, 2008          MERRILL LYNCH BANK USA

                                       _____
                                       By:

16

Dated: _____, 2008                LEHMAN BROTHERS BANK FSB

                                              _____
                                              By:

Dated: _____, 2008                AURORA LOAN SERVICES LLC

                                              _____
                                              By:

Dated: _____, 2008                BARCLAYS BANK PLC,

                                              _____
                                              By:

Dated: _____, 2008                JPMORGANCHASE BANK NA

                                              _____
                                              By:

Dated: July 1, 2008                           NOMURA CREDIT & CAPITAL INC.

                                              By: _____

Dated: _____, 2008                MERRILL LYNCH BANK USA

                                              _____
                                              By:

16

Dated: _____, 2008          LEHMAN BROTHERS BANK FSB

                                        By: _____

Dated: _____, 2008          AURORA LOAN SERVICES LLC

                                        By: _____

Dated: _____, 2008          BARCLAYS BANK PLC,

                                        By: _____

Dated: _____, 2008          JPMORGANCHASE BANK NA

                                        By: _____

Dated: _____, 2008          NOMURA CREDIT & CAPITAL INC.

                                        By: _____

Dated: _____, 2008          MERRILL LYNCH BANK USA

                                        By: Joseph Magnus
                                            Director

Dated: _____, 2008 | MERRILL LYNCH FUNDING CORP

By: _____ JOSEPH D'URSO

Dated: _____, 2008 | MERRILL LYNCH MORTGAGE LENDING INC.

By: _____
Ketan Parekh
Vice President

Dated: _____, 2008 | LASALLE BANK NATIONAL ASSOCIATION, SOLELY IN ITS CAPACITY AS TRUSTEE FOR MERRILL LYNCH MORTGAGE INVESTORS TRUST MORTGAGE LOAN ASSET BACKED CERTIFICATES SERIES 2006 RM 1

By: _____

Dated: _____, 2008 | LASALLE BANK NATIONAL ASSOCIATION, SOLELY IN ITS CAPACITY AS TRUSTEE FOR MERRILL LYNCH MORTGAGE INVESTORS TRUST MORTGAGE LOAN ASSET BACKED CERTIFICATES SERIES 2006 RM 2

By: _____

Dated: _____, 2008 | LASALLE BANK NATIONAL ASSOCIATION, SOLELY IN ITS

17

Dated: _____, 2008        MERRILL LYNCH FUNDING CORP

                                     _____
                                     By:

Dated: _____, 2008        MERRILL LYNCH MORTGAGE
                                     LENDING INC.

                                     _____
                                     By:

Dated: _July 1_____, 2008        LASALLE BANK NATIONAL
                                     ASSOCIATION, SOLELY IN ITS
                                     CAPACITY AS TRUSTEE FOR
                                     MERRILL LYNCH MORTGAGE
                                     INVESTORS TRUST MORTGAGE LOAN
                                     ASSET BACKED CERTIFICATES
                                     SERIES 2006 RM 1

                                     _____
                                     By:     Rita Lopez
                                             Vice President

Dated: _July 1_____, 2008        LASALLE BANK NATIONAL
                                     ASSOCIATION, SOLELY IN ITS
                                     CAPACITY AS TRUSTEE FOR
                                     MERRILL LYNCH MORTGAGE
                                     INVESTORS TRUST MORTGAGE LOAN
                                     ASSET BACKED CERTIFICATES
                                     SERIES 2006 RM 2

                                     _____
                                     By:     Rita Lopez
                                             Vice President

17

Dated: _July 1_____, 2008

LASALLE BANK NATIONAL
ASSOCIATION, SOLELY IN ITS
CAPACITY AS TRUSTEE FOR
MERRILL LYNCH MORTGAGE
INVESTORS TRUST MORTGAGE LOAN
ASSET BACKED CERTIFICATES
SERIES 2006 RM 3

By: _____
        Rita Lopez
        Vice President

Dated: _July 1_____, 2008

LASALLE BANK NATIONAL
ASSOCIATION, SOLELY IN ITS
CAPACITY AS TRUSTEE FOR
MERRILL LYNCH MORTGAGE
INVESTORS TRUST MORTGAGE LOAN
ASSET BACKED CERTIFICATES
SERIES 2006 RM 4

By: _____
        Rita Lopez
        Vice President

Dated: _July 1_____, 2008

LASALLE BANK NATIONAL
ASSOCIATION, SOLELY IN ITS
CAPACITY AS TRUSTEE FOR
MERRILL LYNCH MORTGAGE
INVESTORS TRUST MORTGAGE LOAN
ASSET BACKED CERTIFICATES
SERIES 2006 RM 5

By: _____
        Rita Lopez
        Vice President

## Exhibit A

**Claimants that are Parties to the Stipulation of Settlement Resolving Claims**

DB Structured Products Inc.

Aspen Funding Corp.

Newport Funding Corp.

Lehman Brothers Bank FSB

Aurora Loan Services LLC

Barclays Bank PLC

JPMorganChase Bank NA

Nomura Credit & Capital Inc.

Merrill Lynch Bank USA

Merrill Lynch Funding Corp.

Merrill Lynch Mortgage Lending Inc.

LaSalle Bank National Association, Solely in its Capacity as Trustee for Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM 1

LaSalle Bank National Association, Solely in its Capacity as Trustee for Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM 2

LaSalle Bank National Association, Solely in its Capacity as Trustee for Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM 3

LaSalle Bank National Association, Solely in its Capacity as Trustee for Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM 4

LaSalle Bank National Association, Solely in its Capacity as Trustee for Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM 5

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LIQUIDATING TRUST OF RESMAE MORTGAGE CORPORATION, f/k/a RESMAE MORTGAGE CORPORATION, | Case No. 07-10177 (KJC) |
| | Ref. No. _____ |
| Debtor. | |

**ORDER GRANTING MOTION PURSUANT TO**
**BANKRUPTCY RULE 9019 TO APPROVE A STIPULATION OF**
**SETTLEMENT RESOLVING CLAIMS**

Upon consideration of the motion (the "Motion")[1] of the Liquidating Trust of

ResMAE Mortgage Corporation (the "Trust") for entry of an order pursuant to section 105(a) of

chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for approval of a stipulation of

settlement (the "Stipulation") between the Trust and the parties listed on Exhibit A annexed to

the Stipulation; it appearing that the Court has jurisdiction to consider the Motion pursuant to 28

U.S.C. §§ 157 and 1334(b) and that this matter is a core matter pursuant to 28 U.S.C. §

157(b)(2); and the Court having determined that the relief requested in the Motion is in the best

interests of the Debtor, its Estate and its creditors; and it appearing that due notice of the Motion

has been given, and that no further notice need be given; and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED on the terms set forth herein.

2.     The Stipulation attached hereto is hereby approved.

---

[1]  Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion.

        3.      The Trust is authorized to execute and deliver any documents or other instruments that may be reasonably necessary to consummate the resolution contemplated by the Stipulation.

        4.      This Court retains jurisdiction (i) to interpret, implement and enforce the terms and provisions of the Stipulation, and (ii) to interpret, implement and enforce the provisions of this Order.

Dated: July _____, 2008
       Wilmington, Delaware

 

_____
The Honorable Kevin J. Carey
United States Bankruptcy Judge

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: | Chapter 11 |
| LIQUIDATING TRUST OF RESMAE<br>MORTGAGE CORPORATION, a Delaware<br>Corporation, | Case No. 07-10177 (KJC) |
| Debtor. | |

## STIPULATION OF SETTLEMENT RESOLVING CLAIMS

This Stipulation of Settlement Resolving Claims (the "Stipulation") is entered into by and among the Liquidating Trust of ResMAE Mortgage Corporation (the "Trust") and the Parties who are listed on Exhibit A annexed hereto and who are signatories hereto (the "Claimants", collectively, with the Trust, the "Parties"):

### RECITALS

As and for the Recitals to this Stipulation, the Parties assert the following:

A.    On February 12, 2007, ResMAE Mortgage Corporation (the "Debtor"), filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), 11 U.S.C. §§ 101-1330 in the United States Bankruptcy Court for the District of Delaware (the "Court").

B.    On February 12, 2007, the Debtor filed with the Court its Schedules of Assets and Liabilities (as amended from time to time, the "Schedules").

C.      By order dated March 26, 2007 (the "Bar Date Order"), the Court established April 30, 2007 at 5:00 p.m. (prevailing Pacific Time) as the last date and time for the filing of proofs of claim in this chapter 11 case (the "Bar Date").

D.      On or about July 11, 2007, DB Structured Products Inc. ("DBSP") filed claim number 234 (the "DB Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount of not less than $55,841,737.13 arising out of that certain Master Repurchase Agreement dated as of July 26, 2005 (as amended, supplemented and otherwise modified from time to time) and that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of November 1, 2006 (as amended, supplemented and otherwise modified from time to time).   The DB Filed Claim amends and supercedes one or more previously timely filed claims.

E.      DBSP is listed on the Debtors' schedule F as having an unliquidated, contingent and disputed unsecured claim in the amount of zero dollars (the "DBSP Scheduled Claim", together with the DBSP Filed Claim, the "DBSP Claims").

F.      On or about July 11, 2007, Aspen Funding Corp. ("Aspen") filed claim number 235 (the "Aspen Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount of not less than $55,841,737.13 arising out of that certain Master Repurchase Agreement dated as of July 26, 2005 (as amended, supplemented and otherwise modified from time to time) and that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of November 1, 2006 (as amended, supplemented and otherwise modified from time to time). The Aspen Filed Claim amends and supercedes one or more previously timely filed claims.

G.    Aspen is listed on the Debtors' schedule D as having a claim in the amount of zero dollars (the "Aspen Scheduled Claim", together with the Aspen Filed Claim, the "Aspen Claims").

H.    On or about July 11, 2007, Newport Funding Corp. ("Newport") filed claim number 236 (the "Newport Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount of not less than $55,841,737.13 arising out of that certain Master Repurchase Agreement dated as of July 26, 2005 (as amended, supplemented and otherwise modified from time to time) and that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of November 1, 2006 (as amended, supplemented and otherwise modified from time to time). The Newport Filed Claim amends and supercedes one or more previously timely filed claims.

I.    Aspen and Newport are affiliates of DBSP (collectively, the "DBSP Entities")

J.    On or about April 24, 2007, Lehman Brothers Bank FSB ("Lehman") filed claim number 128 (the "Lehman Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount of not less than $20,727,715.28 arising out of that certain Second Amended and Restated Master Repurchase Agreement Governing Purchases and Sales of Mortgage Loans, dated December 21, 2005 (as amended).

K.    Lehman is listed on the Debtors' schedule F as having an unliquidated, contingent and disputed unsecured claim in the amount of zero dollars (the "Lehman Scheduled Claim", together with the Lehman Filed Claim, the "Lehman Claims").

L.    On or about April 2, 2008, Aurora Loan Services LLC ("Aurora") filed claim number 253 (the "Aurora Filed Claim"), which is alleged to be a secured claim seeking an unliquidated amount of not less than $4,000,248.78 arising from the Debtor's breach of

3

representations and warranties in respect of mortgage loans it originated and sold to various entities for which Aurora is the master servicer. The Aurora Filed Claim amends and supercedes one or more previously filed claims.

      M.      Aurora is an affiliate of Lehman (together, the "Lehman Entities").

      N.      On or about April 30, 2007, Barclays Bank PLC, individually and as agent for buyers ("Barclays"), filed claim number 177 (the "Barclays Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount of not less than $31,809,283.00 arising out of that certain Master Repurchase Agreement dated as of July 25, 2006 and certain related custodial agreements and other transactional documents (as amended from time to time).

      O.      Barclays is listed on the Debtors' schedule F as having an unliquidated, contingent and disputed unsecured claim in the amount of zero dollars (the "Barclays Scheduled Claim", together with the Barclays Filed Claim, the "Barclays Claims").

      P.      On or about April 27, 2007, JPMorganChase Bank NA ("JPMorganChase") filed claim number 146 (the "JPMorganChase Filed Claim"), which is alleged to be a contingent and general unsecured claim seeking an unliquidated amount arising out of that certain Master Loan Repurchase Agreement dated May 31, 2006 and that certain Mortgage Loan Sale and Interim Servicing Agreement dated as of December 1, 2005.

      Q.      JPMorganChase is listed on the Debtors' schedule F as having a general unsecured claim in the amount of $39,324.00 (the "JPMorganChase Scheduled Claim", together with the JPMorganChase Filed Claim, the "JPMorganChase Claims").

      R.      On or about April 27, 2007, Nomura Credit & Capital Inc. and its affiliates ("Nomura") filed claim number 144 (the "Nomura Filed Claim"), which is alleged to be an unsecured claim seeking an unliquidated amount of not less than $1,239,427,168.30 arising out

of that certain letter agreement setting forth the master terms for mortgage loan purchases dated October 1, 2006, that certain Master Mortgage Loan Purchase Agreement dated as of October 1, 2006 and two Pool Summary and Trade Confirmations, one dated as of August 10, 2006 and one dated as of August 24, 2006.

S.    Nomura is listed on the Debtors' schedule D a having an unliquidated, contingent and disputed secured claim in the amount of zero dollars (the "Nomura Scheduled Claim", together with the Nomura Filed Claim, the "Nomura Claims").

T.    On or about April 27, 2007, Merrill Lynch Bank USA ("ML Bank") filed claim number 187 (the "ML Bank Filed Claim"), which is alleged to be a general unsecured and/or an unsecured priority claim seeking an unliquidated amount of not less than $11,100,000.00 arising out of that certain Master Repurchase Agreement dated as of March 7, 2005 (as amended from time to time) and certain related agreements.

U.    ML Bank is listed on the Debtors' schedule F as having an unliquidated, contingent and disputed unsecured claim in the amount of zero dollars (the "ML Bank Scheduled Claim", together with the ML Bank Filed Claim, the "ML Bank Claims").

V.    On or about April 27, 2007, Merrill Lynch Funding Corp. ("ML Funding") filed claim number 152 (the "ML Funding Filed Claim"), which is alleged to be an unsecured, secured and/or priority claim seeking an unliquidated amount arising out of that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of January 1, 2006 (as amended from time to time) and certain related agreements.

W.    On or about April 27, 2007, Merrill Lynch Mortgage Lending Inc. ("ML Lending") filed claim number 151 (the "ML Lending Filed Claim"), which is alleged to be an unsecured, secured and/or priority claim seeking an unliquidated amount arising out of that

5

certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of January 1, 2006 (as amended from time to time) and certain related agreements.

X.    On or about April 27, 2007, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM1 ("ML Trust 1") filed claim number 190 (the "ML Trust 1 Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount arising out of that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of January 1, 2006 (as amended from time to time) and certain related agreements.

Y.    On or about April 27, 2007, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM2 ("ML Trust 2") filed claim number 150 (the "ML Trust 2 Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount arising out of that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of January 1, 2006 (as amended from time to time) and certain related agreements.

Z.    On or about April 27, 2007, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM3 ("ML Trust 3") filed claim number 148 (the "ML Trust 3 Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount arising out of that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of January 1, 2006 (as amended from time to time) and certain related agreements.

AA.    On or about April 27, 2007, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM4 ("ML Trust 4") filed claim number 149 (the "ML Trust 4 Filed Claim"), which is alleged to be a general unsecured claim seeking an

unliquidated amount arising out of that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of January 1, 2006 (as amended from time to time) and certain related agreements.

BB.    On or about April 27, 2007, Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM5 ("ML Trust 5" and, collectively, with ML Trust 1, ML Trust 2 ML Trust 3 and ML Trust 4, the "ML Trusts") filed claim number 147 (the "ML Trust 5 Filed Claim"), which is alleged to be a general unsecured claim seeking an unliquidated amount arising out of that certain Master Mortgage Loan Purchase and Interim Servicing Agreement dated as of January 1, 2006 (as amended from time to time) and certain related agreements.

CC.    ML Funding and ML Lending are affiliates of ML Bank and ML Lending is the sponsor of the ML Trust 1, ML Trust 2, ML Trust 3, ML Trust 4, and ML Trust 5 (collectively, the "ML Entities"),

DD.    On June 5, 2007, the Court entered the Findings of Fact, Conclusions of Law and Order under 11 U.S.C. §§ 1129(a) and (b) and Fed. R. Bankr. P. 3020 Confirming the Second Amended Plan of Reorganization of the Debtor Proposed by the Debtor and Sponsored by RMC Mortgage Holdings LLC Dated June 5, 2007 (the "Confirmation Order").

EE.    On June 15, 2007 (the "Effective Date"), the Second Amended Plan of Reorganization of the Debtor Proposed by the Debtor and Sponsored by RMC Mortgage Holdings LLC Dated June 5, 2007 (as supplemented, modified, or amended, the "Plan") became effective.

FF.    Pursuant to the Plan, on the Effective Date the Trust was created and the Declaration of Trust, Estate Administration and Liquidating Trust Agreement (the "Trust

7

Agreement") was executed appointing Alan M. Jacobs as Liquidating Trustee of the Trust (the "Trustee").

GG.    On the Effective Date, the Debtor transferred the Trust Property to the Trust in accordance with the Plan.

HH.    Pursuant to Section 3.4 of the Trust Agreement, as of the Effective Date, the exclusive right to object to the allowance of any claim was reserved by the Trust and the Trustee was given the authority and power to file objections regarding the allowance and disallowance of claims.

NOW, THEREFORE, in consideration of the promises and mutual covenants contained herein and other valuable consideration, the receipt of which is hereby acknowledged, it is stipulated and agreed by and among the Parties, as follows:

1.    The recitals set forth above are incorporated herein by reference.

2.    In full and final resolution of the DBSP Claims, the Aspen Claims, the Newport Filed Claim, and any and all other claims filed by, or scheduled on behalf of the DBSP Entities, whether secured, administrative, priority, or general unsecured, the DBSP Entities shall have a single allowed unsecured claim in the aggregate amount of ten million dollars ($10,000,000.00) (the "Allowed DBSP Claim"), which shall be treated as an Allowed Claim in Class 3 as defined in the Plan.  Any distribution due to the DBSP Entities under the Plan shall be paid to DBSP; provided, however, DBSP, Aspen and Newport reserve the right to determine the appropriate allocation among DBSP, Aspen and Newport of any distributions received from the Trust on behalf of the Allowed DBSP Claim.

3.    In full and final resolution of the Lehman Claims, the Aurora Filed Claim, and any and all other claims filed by, or scheduled on behalf of, the Lehman Entities, whether

8

secured, administrative, priority, or general unsecured, the Lehman Entities shall have a single allowed unsecured claim in the amount of ten million dollars ($10,000,000.00) (the "Allowed Lehman Claim"), which shall be treated as an Allowed Claim in Class 3 as defined in the Plan. Any distribution due to the Lehman Entities under the Plan shall be paid to Lehman, provided, however, Lehman and Aurora reserve the right to determine the appropriate allocation between them of any distributions received from the Trust on behalf of the Allowed Lehman Claim.

4.     In full and final resolution of the Barclays Claims and any and all other claims filed by, or scheduled on behalf of, Barclays, whether secured, administrative, priority, or general unsecured, Barclays shall have a single allowed unsecured claim in the amount of ten million dollars ($10,000,000.00) (the "Allowed Barclays Claim"), which shall be treated as an Allowed Claim in Class 3 as defined in the Plan.

5.     In full and final resolution of the JPMorganChase Claims and any and all other claims filed by, or scheduled on behalf of, JPMorganChase, whether secured, administrative, priority, or general unsecured, JPMorganChase shall have a single allowed unsecured claim in the amount of ten million dollars ($10,000,000.00) (the "Allowed JPMorganChase Claim"), which shall be treated as an Allowed Claim in Class 3 as defined in the Plan.

6.     In full and final resolution of the Nomura Claims and any and all other claims filed by, or scheduled on behalf of, Nomura, whether secured, administrative, priority, or general unsecured, Nomura shall have a single allowed unsecured claim in the amount of ten million dollars ($10,000,000.00) (the "Allowed Nomura Claim"), which shall be treated as an Allowed Claim in Class 3 as defined in the Plan.

7.     In full and final resolution of the ML Bank Claims, the ML Funding Filed Claim, the ML Lending Filed Claim, the ML Trust 1 Filed Claim, the ML Trust 2 Filed Claim, the ML

Trust 3 Filed Claim, the ML Trust 4 Filed Claim, the ML Trust 5 Filed Claim and any and all other claims filed by, or scheduled on behalf of, the ML Entities, whether secured, administrative, priority, or general unsecured, the ML Entities shall have a single allowed unsecured claim in the amount of ten million dollars ($10,000,000.00) (the "Allowed ML Claim," collectively with the Allowed DBSP Claim, the Allowed Lehman Claim, the Allowed Barclays Claim, the Allowed JPMorganChase Claim, and the Allowed Nomura Claim, the "Allowed Claims", and individually each an "Allowed Claim") which shall be treated as an Allowed Claim in Class 3 as defined in the Plan. Any distribution due to the ML Entities under the Plan shall be paid to ML Bank in trust for itself and the other ML Entities; provided, however, ML Bank, ML Funding, ML Lending, ML Trust 1, ML Trust 2, ML Trust 3, ML Trust 4, and ML Trust 5 reserve the right to determine the appropriate allocation among ML Bank, ML Funding, ML Lending, ML Trust 1, ML Trust 2, ML Trust 3, ML Trust 4, and ML Trust 5 of any distributions received by ML Bank from the Trust on behalf of the Allowed ML Claim. Any of the ML Trusts, however, may withdraw its consent to this Stipulation if LaSalle Bank National Association ("LaSalle") as trustee for such ML Trust, delivers a written certification to the Trust on or before July 25, 2008 which certifies that fifty percent (50% to be measured in principal (or notional) amount outstanding) of the security holders of such ML Trust have directed LaSalle to withdraw from this Stipulation ("Certified Statement").

8.    The Parties understand and acknowledge that this Stipulation is subject to approval by the Court and that this Stipulation shall not become final and binding upon the Parties until the entry by the Court or of an appellate court, where applicable, of an order approving this Stipulation (the "Final Order"). For purposes of this Stipulation, a "Final Order" means an order, the operation or effect of which has not been stayed, reversed or amended and as

to which the time to appeal or such review or rehearing has expired and as to which no appeal or petition for review or rehearing was filed or, if filed, remains pending.

9.    If a Certified Statement is received by the Trust as set forth in paragraph 7 of this Stipulation or if this Stipulation is not approved by the Court or the Court's order is reversed by a higher court, the Stipulation shall be deemed null and void and all releases set forth in this Stipulation shall be deemed null and void. Furthermore, if this Stipulation is not approved by the Court or the Court's order approving this Stipulation is reversed by a higher court, the terms or statements contained in this Stipulation, any motion or motions filed seeking an order from the Court approving this Stipulation, and any correspondence related to the negotiation, drafting or approval of this Stipulation, shall not be argued or deemed to be an admission against any Party's interest in any litigation by and among the Parties.

10.    If either of the following conditions (the "Conditions") is not met then each Claimant shall be entitled to provide to the Trust and each of the other Claimants written notification (a "Notice of Withdrawal") of such Claimant's intent to withdraw its consent to this Stipulation: i) the Final Order shall have been entered by the Court on or before August 20, 2008 and ii) the Trustee shall have made a distribution equal to at least 10% on each Allowed Claim in accordance with paragraphs 2 through 7 herein on or before September 30, 2008 (the "Initial Distribution"). Upon receipt of a Notice of Withdrawal from one or more of the Claimants, the Trustee shall have five (5) business days to take any necessary steps to ensure entry of the Final Order and/or effectuate the Initial Distribution. If, after five (5) business days from the Trustee's receipt of a Notice of Withdrawal, the Final Order has not been entered by the Court or the Initial Distribution has not been made, this Stipulation shall be deemed null and void and all releases

11

set forth in this Stipulation shall be deemed null and void. The Trustee shall reasonable efforts to assure that the Conditions are met.

11.    Conditional upon the Trust's receipt of an executed copy of this Stipulation by all Parties, entry of the Final Order, and subject to the provisions of paragraph 10, the Trustee, on behalf of the Trust, and to the extent authorized and empowered, on behalf of the Debtor, and each of their respective predecessors, successors and assigns (collectively, the "Trust Releasing Parties") hereby releases, waives, discharges and relinquishes any and all claims, causes of action, damages, liabilities, demands, rights and losses of whatever kind and nature, known or unknown, past or present, existing before or as of the date of this Stipulation, of any nature whatsoever, whether in tort (including, without limitation, acts of active negligence), contract or any other theory of recovery in law, admiralty or equity, whether or not wrongful, whether for compensatory or punitive damages, equitable relief or otherwise, and whether now known or unknown, suspected or unsuspected, that any of the Trust Releasing Parties has or had against the Claimants and current and former officers and directors of the Claimants, which are based upon or arise out of or in connection with any matter, cause or thing existing at any time prior to the date hereof or anything done, omitted or suffered to be done at any time prior to the date hereof; provided, however, that nothing herein shall release any rights that the Trust has in or to the ResMAE Asset-Backed Pass-Through Certificates 2006-1, including, but not limited to, the Trust's rights in the Originator Reserve Account.

12.    Upon each Claimant's receipt of an executed copy of this Stipulation by all Parties, entry of the Final Order and subject to the provisions of paragraph 10, each Claimant hereby releases, waives, discharges and relinquishes any and all claims, causes of action, damages, liabilities, demands, rights and losses of whatever kind and nature, known or unknown,

12

past or present, existing before, or as of the date of this Stipulation, of any nature whatsoever, whether in tort (including, without limitation, acts of active negligence), contract or any other theory of recovery in law, admiralty or equity, whether or not wrongful, whether for compensatory or punitive damages, equitable relief or otherwise, and whether now known or unknown, suspected or unsuspected, that the Claimant have or had against the Trust Releasing Parties, which are based upon or arise out of or in connection with any matter, cause or thing existing at any time prior to the date hereof or anything done, omitted or suffered to be done or omitted at any time prior to the date hereof, including but not limited to any and all claims filed by, or scheduled on behalf of, such Claimant; provided, however, nothing in this paragraph shall release the Debtor, the Trust or the Liquidating Trustee from its obligation to make distributions with respect to the Allowed Claims.

13.    Each Party represents that it owns and has not assigned or otherwise transferred to any other person or entity any of such Party's rights and claims as are being altered or otherwise affected by this Stipulation.

14.    The Parties acknowledge that this Stipulation is a compromise of disputed claims and that no Party admits, and each expressly denies, any liability on its part.

15.    Each person signing this Stipulation represents and warrants that he/she has been duly authorized and has the requisite authority to execute and deliver this Stipulation on behalf of such Party and/or to bind his/her respective client(s) to the terms and conditions of this Stipulation.

16.    The Parties further declare that, in making this Stipulation, they rely entirely upon their own judgment, beliefs and interests and the advice of their counsel (for whose expense each

13

shall be solely responsible) and that they have had a reasonable period of time to consider this Stipulation.

17.     The Parties agree that each Party has reviewed this Stipulation and that each fully understands and voluntarily accepts all the provisions contained in this Stipulation. The Parties further agree that this Stipulation was the product of negotiations between each of the Claimants and the Trust and that any rule of construction that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Stipulation.

18.     The language of all parts of this Stipulation shall in all cases be construed as a whole, according to its fair meaning and not strictly for or against any of the Parties.

19.     Should any immaterial provision of this Stipulation be declared or be determined by any court of competent jurisdiction to be illegal, invalid or unenforceable, the legality, validity and enforceability of the remaining parts, terms or provisions shall not be affected thereby and said illegal, unenforceable or invalid part, term or provision shall be deemed not to be a part of this Stipulation.

20.     This Stipulation sets forth the entire agreement among the Parties and fully supercedes any and all prior agreements and understandings, written or oral, among the Parties pertaining to the subject matter hereof.

21.     No modification of this Stipulation shall be binding or enforceable unless in writing and signed by each of the Parties.

22.     This Stipulation shall be binding upon and inure to the benefit of the Parties, their respective heirs, executors, successors, administrators and assigns.

23.     With respect to any action to enforce the terms and provisions of this Agreement, each of the Parties hereby irrevocably consents to the jurisdiction of the Court, while the

Bankruptcy Cases are pending in this Court, and otherwise the federal courts in Wilmington, Delaware and each of the Parties expressly waives any right to commence any such action in any other forum.

24.    This Stipulation may be executed in one or more counterparts, and signatures supplied by facsimile or other electronic means shall be deemed as if originals, and all of which together shall constitute one and the same instrument.

**AGREED:**

Dated:  _____ July 1 _____, 2008

THE LIQUIDATING TRUST OF RESMAE MORTGAGE CORPORATION

By: Alan M. Jacobs, Trustee

Dated:  _____, 2008

DB STRUCTURED PRODUCTS INC.

By: _____

Dated:  _____, 2008

ASPEN FUNDING CORP.

By: _____

Dated:  _____, 2008

NEWPORT FUNDING CORP.

By: _____

15

Bankruptcy Cases are pending in this Court, and otherwise the federal courts in Wilmington, Delaware and each of the Parties expressly waives any right to commence any such action in any other forum.

24.    This Stipulation may be executed in one or more counterparts, and signatures supplied by facsimile or other electronic means shall be deemed as if originals, and all of which together shall constitute one and the same instrument.

**AGREED:**

Dated: _____, 2008

THE LIQUIDATING TRUST OF RESMAE
MORTGAGE CORPORATION

_____
By: Alan M. Jacobs, Trustee

Dated: _____, 2008

DB STRUCTURED PRODUCTS INC.

_____
By: GLENN MINKOFF

Dated: _____, 2008

ASPEN FUNDING CORP.

_____
By:

Dated: _____, 2008

NEWPORT FUNDING CORP.

_____
By:

15

Bankruptcy Cases are pending in this Court, and otherwise the federal courts in Wilmington, Delaware and each of the Parties expressly waives any right to commence any such action in any other forum.

24.    This Stipulation may be executed in one or more counterparts, and signatures supplied by facsimile or other electronic means shall be deemed as if originals, and all of which together shall constitute one and the same instrument.

**AGREED:**

Dated: _____, 2008          THE LIQUIDATING TRUST OF RESMAE
                                         MORTGAGE CORPORATION


                                         _____
                                         By: Alan M. Jacobs, Trustee


Dated: _____, 2008          DB STRUCTURED PRODUCTS INC.


                                         _____
                                         By:


Dated: _____, 2008          ASPEN FUNDING CORP.

                                         *Doris J. Hearn*
                                         _____
                                         By:   Doris J. Hearn, Vice President


Dated: _____, 2008          NEWPORT FUNDING CORP.

                                         *Doris J. Hearn*
                                         _____
                                         By:   Doris J. Hearn, Vice President


15

Dated: _____, 2008          LEHMAN BROTHERS BANK FSB


                                        By: _____

Dated: _____, 2008          AURORA LOAN SERVICES LLC


                                        By: _____

Dated: _____, 2008          BARCLAYS BANK PLC,


                                        By: _____

Dated: _____, 2008          JPMORGANCHASE BANK NA


                                        By: _____

Dated: _____, 2008          NOMURA CREDIT & CAPITAL INC.


                                        By: _____

Dated: _____, 2008          MERRILL LYNCH BANK USA


                                        By: _____

16

Dated: _____, 2008         LEHMAN BROTHERS BANK FSB

                                        _____
                                        By:

Dated: _Jvly 1st_____, 2008          AURORA LOAN SERVICES LLC

                                        _____
                                        By: Zachary Trumpp

Dated: _____, 2008         BARCLAYS BANK PLC,

                                        _____
                                        By:

Dated: _____, 2008         JPMORGANCHASE BANK NA

                                        _____
                                        By:

Dated: _____, 2008         NOMURA CREDIT & CAPITAL INC.

                                        _____
                                        By:

Dated: _____, 2008         MERRILL LYNCH BANK USA

                                        _____
                                        By:

Dated: _____, 2008                LEHMAN BROTHERS BANK FSB


                                              _____
                                              By:


Dated: _____, 2008                AURORA LOAN SERVICES LLC


                                              _____
                                              By:


Dated: _____, 2008                BARCLAYS BANK PLC,


                                              _____
                                              By:   ARTHUR J. OLSEN


Dated: _____, 2008                JPMORGANCHASE BANK NA


                                              _____
                                              By:


Dated: _____, 2008                NOMURA CREDIT & CAPITAL INC.


                                              _____
                                              By:


Dated: _____, 2008                MERRILL LYNCH BANK USA


                                              _____
                                              By:


16

Dated: _____, 2008          LEHMAN BROTHERS BANK FSB


                                         By: _____


Dated: _____, 2008          AURORA LOAN SERVICES LLC


                                         By: _____


Dated: _____, 2008          BARCLAYS BANK PLC,


                                         By: _____


Dated: _____, 2008          JPMORGANCHASE BANK NA


                                         By: _____
                                             JOHN P. McDONAGH
                                             MANAGING DIRECTOR

Dated: _____, 2008          NOMURA CREDIT & CAPITAL INC.


                                         By: _____


Dated: _____, 2008          MERRILL LYNCH BANK USA


                                         By: _____

16

Dated: _____, 2008          LEHMAN BROTHERS BANK FSB

                                        By: _____

Dated: _____, 2008          AURORA LOAN SERVICES LLC

                                        By: _____

Dated: _____, 2008          BARCLAYS BANK PLC,

                                        By: _____

Dated: _____, 2008          JPMORGANCHASE BANK NA

                                        By: _____

Dated: July 1, 2008                     NOMURA CREDIT & CAPITAL INC.

                                        By: _David Findlay_____

Dated: _____, 2008          MERRILL LYNCH BANK USA

                                        By: _____

16

Dated: _____, 2008          LEHMAN BROTHERS BANK FSB


                                        _____
                                        By:

Dated: _____, 2008          AURORA LOAN SERVICES LLC


                                        _____
                                        By:

Dated: _____, 2008          BARCLAYS BANK PLC,


                                        _____
                                        By:

Dated: _____, 2008          JPMORGANCHASE BANK NA


                                        _____
                                        By:

Dated: _____, 2008          NOMURA CREDIT & CAPITAL INC.


                                        _____
                                        By:

Dated: _____, 2008          MERRILL LYNCH BANK USA


                                        _____
                                        By: Joseph Magnus
                                            Director

Dated: _____, 2008     MERRILL LYNCH FUNDING CORP

By: _____ JOSEPH DIVERSO _____

Dated: _____, 2008     MERRILL LYNCH MORTGAGE
LENDING INC.

By: _____
      Ketan Parekh
      Vice President

Dated: _____, 2008     LASALLE BANK NATIONAL
ASSOCIATION, SOLELY IN ITS
CAPACITY AS TRUSTEE FOR
MERRILL LYNCH MORTGAGE
INVESTORS TRUST MORTGAGE LOAN
ASSET BACKED CERTIFICATES
SERIES 2006 RM 1

By: _____

Dated: _____, 2008     LASALLE BANK NATIONAL
ASSOCIATION, SOLELY IN ITS
CAPACITY AS TRUSTEE FOR
MERRILL LYNCH MORTGAGE
INVESTORS TRUST MORTGAGE LOAN
ASSET BACKED CERTIFICATES
SERIES 2006 RM 2

By: _____

Dated: _____, 2008     LASALLE BANK NATIONAL
ASSOCIATION, SOLELY IN ITS

17

Dated: _____, 2008

MERRILL LYNCH FUNDING CORP

By: _____

Dated: _____, 2008

MERRILL LYNCH MORTGAGE
LENDING INC.

By: _____

Dated: _July 1_____, 2008

LASALLE BANK NATIONAL
ASSOCIATION, SOLELY IN ITS
CAPACITY AS TRUSTEE FOR
MERRILL LYNCH MORTGAGE
INVESTORS TRUST MORTGAGE LOAN
ASSET BACKED CERTIFICATES
SERIES 2006 RM 1

By: _Rita Lopez_____
      Vice President

Dated: _July 1_____, 2008

LASALLE BANK NATIONAL
ASSOCIATION, SOLELY IN ITS
CAPACITY AS TRUSTEE FOR
MERRILL LYNCH MORTGAGE
INVESTORS TRUST MORTGAGE LOAN
ASSET BACKED CERTIFICATES
SERIES 2006 RM 2

By: _Rita Lopez_____
      Vice President

17

Dated: July 1          , 2008

LASALLE BANK NATIONAL
ASSOCIATION, SOLELY IN ITS
CAPACITY AS TRUSTEE FOR
MERRILL LYNCH MORTGAGE
INVESTORS TRUST MORTGAGE LOAN
ASSET BACKED CERTIFICATES
SERIES 2006 RM 3

By:     Rita Lopez
        Vice President

Dated: July 1          , 2008

LASALLE BANK NATIONAL
ASSOCIATION, SOLELY IN ITS
CAPACITY AS TRUSTEE FOR
MERRILL LYNCH MORTGAGE
INVESTORS TRUST MORTGAGE LOAN
ASSET BACKED CERTIFICATES
SERIES 2006 RM 4

By:     Rita Lopez
        Vice President

Dated: July 1          , 2008

LASALLE BANK NATIONAL
ASSOCIATION, SOLELY IN ITS
CAPACITY AS TRUSTEE FOR
MERRILL LYNCH MORTGAGE
INVESTORS TRUST MORTGAGE LOAN
ASSET BACKED CERTIFICATES
SERIES 2006 RM 5

By:     Rita Lopez
        Vice President

18

## Exhibit A

### Claimants that are Parties to the Stipulation of Settlement Resolving Claims

DB Structured Products Inc.

Aspen Funding Corp.

Newport Funding Corp.

Lehman Brothers Bank FSB

Aurora Loan Services LLC

Barclays Bank PLC

JPMorganChase Bank NA

Nomura Credit & Capital Inc.

Merrill Lynch Bank USA

Merrill Lynch Funding Corp.

Merrill Lynch Mortgage Lending Inc.

LaSalle Bank National Association, Solely in its Capacity as Trustee for Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM 1

LaSalle Bank National Association, Solely in its Capacity as Trustee for Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM 2

LaSalle Bank National Association, Solely in its Capacity as Trustee for Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM 3

LaSalle Bank National Association, Solely in its Capacity as Trustee for Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM 4

LaSalle Bank National Association, Solely in its Capacity as Trustee for Merrill Lynch Mortgage Investors Trust Mortgage Loan Asset Backed Certificates Series 2006 RM 5

# EXHIBIT C

336 B.R. 87, *; 2005 Bankr. LEXIS 2606, **

LEXSEE 2005 BANKR. LEXIS 2606



Positive
As of: Jun 05, 2008

**In Re: KEY3MEDIA GROUP, INC., et al.,[1] Debtors. KEY3MEDIA GROUP, INC., on behalf of the substantively consolidated post-confirmation estate, and in particular, Class 4 creditors under the Debtors' confirmed Joint Amended Plan of Reorganization, Plaintiff, PULVER.COM, INC., et. al.,[2] Defendants and Third Party Plaintiffs MEDIALIVE INTERNATIONAL INC. (f/k/a Key3Media Group, Inc.), Third Party Defendant**

1 The Debtors are Key3Media Group, Inc., Key3Media Events, Inc., Key3Media VON Events, Inc., Key3Media BCR Events, Inc., Key3Media Advertising, Inc., and Key3Media BioSec Corp. (collectively, the "Debtors").
2 The Defendants and Third Party Plaintiffs are Pulver.com, Inc., Pulver.com Europe, Ltd., Pulver.com Asia, Ltd., Pulver.com Conferences, Inc., and Jeffery Pulver (collectively, the "Defendants" or "Pulver").

**In Proceedings Under Chapter 11, Case No.: 03-10323, Adv.Proc.No.04-57972**

**UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE**

*336 B.R. 87; 2005 Bankr. LEXIS 2606*

**October 7, 2005, Decided**

**SUBSEQUENT HISTORY:** Affirmed by *Key3Media Group, Inc. v. Pulver.com, Inc. (In re Key3media Group, Inc.), 2006 U.S. Dist. LEXIS 72049 (D. Del., Oct. 2, 2006)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff Chapter 11 debtors, on behalf of the creditor representative, filed an action against defendant asset purchaser to avoid two alleged fraudulent transfers. The purchaser counterclaimed for breach of contract and indemnification. The creditor representative and the debtors moved pursuant to *Fed. R. Bankr. P. 9019* for approval of a settlement agreement with the purchaser. Certain unsecured creditors filed an objection.

**OVERVIEW:** The debtors, which operated information technology events, had acquired two event brands from the purchaser for $ 41.5 million. The debtors subsequently resold the assets to the purchaser for $

4,375,000. The debtors challenged both transfers under *11 U.S.C.S. §§ 544(b), 548, and 550 and N.Y. Debt. & Cred. Law §§ 273 and 274.* The settlement agreement called for the purchaser to pay $ 1,150,000 to the creditor representative. The creditors argued that the debtors had a strong case because the drastic decline in price was evidence that the debtors did not receive reasonably equivalent value in one or both transactions. However, the court found that the proposed settlement was fair, equitable, and in the best interests of the bankruptcy estate. The debtors' probability of success in litigation was low; the valuation of intangible assets was inherently difficult, especially in the Internet and technology industries, and the assets were affected by the September 11, 2001, terrorist attacks and economic problems in the Internet industry. Also, the purchaser's counterclaims could have negated any recovery, and additional costs would have been incurred in litigating the case.

**OUTCOME:** The creditors' objection was overruled, and the motion for approval of the settlement was granted.

**LexisNexis(R) Headnotes**

***Bankruptcy Law > Practice & Proceedings > General Overview***
[HN1] Pursuant to *Fed. R. Bankr. P. 9019(a)*, the authority to approve a compromise settlement is within the sound discretion of the bankruptcy court. In exercising this discretion, the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interest of the estate.

***Bankruptcy Law > Practice & Proceedings > General Overview***
[HN2] Under *Fed. R. Bankr. P. 9019(a)*, a bankruptcy court has a duty to make an informed, independent judgment that a compromise is fair and equitable. To be informed the bankruptcy court must be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate.

***Bankruptcy Law > Practice & Proceedings > General Overview***
[HN3] In its efforts to resolve a matter, it is not necessary for a bankruptcy court to conclusively determine claims subject to a compromise, nor must the court have all of the information necessary to resolve the factual dispute, for by so doing, there would be no need of settlement. Nor is the court required to make a determination that the settlement is the best possible compromise. In determining whether to approve a settlement, the court is not supposed to have a mini-trial on the merits, but should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness.

***Bankruptcy Law > Practice & Proceedings > General Overview***
[HN4] When determining whether a compromise is in the best interests of a bankruptcy estate, a bankruptcy court must assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal. Four criteria that a bankruptcy court should consider in striking this balance include (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. Additionally, the court should consider the proposition that to minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy.

***Bankruptcy Law > Practice & Proceedings > General Overview***
[HN5] Debtors carry a burden of persuasion to provide a bankruptcy court with sufficient information to conclude that a compromise falls within the reasonable range of litigation possibilities. This is not, however, a burden of proof regarding the underlying claim. While a court generally gives deference to a debtor's business judgment in deciding whether to settle a matter, the debtor has the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved. The court is neither to rubber stamp the debtor's proposals nor to substitute its judgment for the trustee's.

***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Fraudulent Transfers > Value***
***Contracts Law > Debtor & Creditor Relations***
[HN6] Under the U.S. Bankruptcy Code and New York Debtor and Creditor Law, in order for a transfer of a debtor's interest in property or any obligation incurred by the debtor to be considered a fraudulent conveyance and to be avoided, the trustee must show that the debtor received less than reasonably equivalent value in exchange for such transfer or obligation (using the language of the Bankruptcy Code) or that the conveyance was made without fair consideration (using the language of the New York Debtor and Creditor Law). Courts typically use these terms interchangeably, and do not usually make a distinction between the standard required for reasonably equivalent value, on the one hand, and fair consideration, on the other. N.Y. Debt. & Cred. Law §§ 273-275 are essentially identical to *11 U.S.C.S. § 548(a)* of the Bankruptcy Code.

***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Fraudulent Transfers > Value***
***Evidence > Procedural Considerations > Burdens of Proof > Allocation***
[HN7] The burden of proving that a debtor received less than reasonably equivalent value under *11 U.S.C.S. § 548* rests upon the trustee.

***Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Fraudulent Transfers > Value***
[HN8] Under fraudulent transfer law, the determination of reasonably equivalent value should consider the totality of the circumstances, including a variety of factors, such as the fair market value of the item or service re-

ceived compared to the price paid, the arms-length nature of the transaction, and the good faith of the transferee. Further, the determination of reasonably equivalent value must be made at the time of the transaction. The critical time is when the transfer was made.

*Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Fraudulent Transfers > Value*
[HN9] For purposes of a fraudulent transfer claim in bankruptcy, the fact that a debtor chose to sell assets for a much lower price than it originally paid is not sufficient, alone, to show that it did not receive a reasonably equivalent value in either transaction. The United States Court of Appeals for the Third Circuit has rejected an approach that would permit a court viewing the events with the benefit of hindsight to conclude that any transfer that did not bring in the actual, economic equivalent of what was given up fails to confer reasonably equivalent value as a matter of law.

*Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Fraudulent Transfers > Value*
[HN10] For purposes of a fraudulent transfer claim in bankruptcy, the valuation of intangible assets, such as brand names, is inherently difficult to establish conclusively. The good will represented by a corporate name or a trade name is intangible and difficult of exact description or valuation. This is especially true in the Internet and technology industries.

*Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Fraudulent Transfers > Value*
[HN11] For purposes of a fraudulent transfer claim in bankruptcy, predicting the operating performance of assets is an exercise of the business judgment of debtors. Predictions of that character are, at best, educated guesses, and a debtor's assessment of risk is exactly the kind of business decision that the business judgment rule respects.

*Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Fraudulent Transfers > Value*
[HN12] For purposes of a fraudulent transfer claim in bankruptcy, a debtor is not required to accurately predict general economic conditions that may affect demand for its products or services.

*Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Fraudulent Transfers > Value*

[HN13] For purposes of a fraudulent transfer claim in bankruptcy, even a discount from estimated market value may be considered reasonable where the transaction involves a unique object, or intangible property. The values of assets must be updated in light of subsequent use and market conditions: in accounting parlance: they must be marked to market.

*Bankruptcy Law > Case Administration > Examiners, Officers & Trustees > Fraudulent Transfers > Value*
[HN14] For purposes of a fraudulent transfer claim in bankruptcy, courts measuring reasonably equivalent value have consistently viewed its location to be a point on a continuum of prices which is at and below to some degree the market value. Fair market value, while not dispositive, is an important element and often a starting point for determining reasonably equivalent value.

*Bankruptcy Law > Practice & Proceedings > General Overview*
*Bankruptcy Law > Reorganizations > General Overview*
[HN15] The prior costs already incurred by a bankruptcy estate are irrelevant in the determination of whether a current settlement proposal is in the best interests of the estate. Administrative fees and expenses are necessary, and often non-discretionary, costs to obtaining the relief provided by Chapter 11. The fact that the Chapter 11 process has been costly thus far does not make future expenses more favorable. The issue is whether the net benefits of the litigation are outweighed by the value of the proposed settlement.

*Bankruptcy Law > Practice & Proceedings > General Overview*
[HN16] In determining whether to approve a settlement in a bankruptcy case, while creditors' objections are not controlling, emphasis is placed on the paramount interests of creditors and proper deference given to reasonable views set forth in their objections. In addition to the creditors' objections, the court may give weight to the opinions of the trustees, the parties, and their counsel, in determining the reasonableness of the proposed settlement. On the other hand, the objections of creditors cannot be permitted to predominate over the best interests of the estate as a whole. When determining whether a proposed settlement is in an estate's best interests, the court must necessarily examine the relative priorities of the contested claim and the estate's other claims.

COUNSEL:  [**1]  For Key3Media Group, Inc., on behalf of all affiliated Debtors, Plaintiff: Laura Davis

Jones, Pachulski Stang Ziehl Young and Jones, Wilmington, DE; Sandra G.M. Selzer, Pachulski Stang Ziehl Young Jones, Wilmington, DE; Sandra G.M. Selzer, Pachulski Stang Ziehl Young Jones, Wilmington, DE.

For Jeffrey Pulver, Pulver.com Asia Pacific, Ltd., Pulver.com Conferences, Inc., Pulver.com Europe, Ltd., Pulver.com, Inc., Counter-Claimants: Mark J. Packel, Blank Rome LLP, Wilmington, DE.

For Jeffrey Pulver, Pulver.com Conferences, Inc., Pulver.com Asia Pacific, Ltd., Pulver.com Europe, Ltd., Pulver.com, Inc., 3rd Party Plaintiffs: Elio Battista, Jr., Blank Rome LLP, Wilmington, DE.

For Medialive International, Inc. (f/k/a Key3Media Group, Inc.), 3rd Pty Defendant: Christina M. Houston, Richards, Layton & Finger, P.A., Wilmington, DE; John H. Knight, Richards Layton & Finger, Wilmington, DE.

For Key3Media Group, Inc., San Francisco, CA, Debtor: Christina M. Houston, Jason M. Madron, John H. Knight, John Henry Knight, Richards, Layton & Finger, P.A., Wilmington, DE; Etta Rena Wolfe, Smith Katzenstein & Furlow LLP, Wilmington, DE; Paula Ann Galbraith, Chicago, IL.

For U. [**2] S. Trustee, Official Committee of Unsecured, Creditors, Creditor Committee: Kevin Gross, Rosenthal Monhait Gross & Goddess, Wilmington, DE; Paula Ann Galbraith, Paula Ann Galbraith, Chicago, IL; Sandra G.M. Selzer, Pachulski Stang Ziehl Young Jones, Wilmington, DE.

JUDGES: RANDOLPH BAXTER, JUDGE.

OPINION BY: RANDOLPH BAXTER

OPINION

[*90] MEMORANDUM OF OPINION AND ORDER

Before the Court is the Joint Motion of AlixPartners ("Creditor Representative") and Key3Media Group, Inc. ("Debtors"), on behalf of the Debtors' post-confirmation estate, for an Order Approving Settlement Between the Debtors and Avoidance Defendants in the above-styled adversary proceeding. The Interface Creditors [3] filed an objection to the Debtors' Motion.

> 3    Interface Group-Massachusetts, LLC, Interface Group-Nevada, Inc., and Venetian Casino Resort, LLC (collectively, the "Interface Creditors"). The Interface Creditors collectively hold

allowed unsecured claims in excess of $ 10 million.

The Court acquires core matter jurisdiction over this matter [**3] pursuant to 28 U.S.C. § 157(a), (b) and 1334(b). Upon a duly noticed hearing, the following factual findings and conclusions of law are hereby rendered:

\*

The Debtors own and operate information technology events throughout the world. Defendant Pulver produces conferences and trade shows in the Voice Over the Internet Protocol industry. On September 10, 2001, through an Asset Purchase Agreement, the Debtors acquired two event brands from Pulver. The initial agreement called for an immediate payment of $ 36,000,000, with the remaining amounts to be placed in escrow to be dispersed in accordance with the EBITDA performance of certain Pulver events. On August 22, 2002, the Debtors and Pulver entered into an agreement to fix the final purchase price at $ 41,502,000.

On February 2, 2003, the Debtors filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. The Court entered an Order Confirming the Debtors' First Amended Joint Plan of [*91] Reorganization (the "Plan") on June 4, 2003. The Plan became effective on June 20, 2003.

On December 17, 2004, pursuant to Section 6.7 (a) of the Plan, the Debtors, on behalf of the Creditor Representative, [**4] [4] filed an action to avoid two alleged fraudulent transfers: (1) the September 10, 2001 transfer pursuant to which the Debtors acquired Pulver.com from the Defendants for a total purchase price of $ 41,502,000; and (2) the January 24, 2003 transfer pursuant to which the Debtors sold Pulver.com back to the Defendants for approximately $ 4,375,000.

> 4    Section 6.7(a) of the plan provides that the duly appointed Creditor Representative may require and direct the Reorganized Debtors to bring avoidance actions on behalf of creditors, and to direct the prosecution of such actions in all aspects under the Creditor Representative's supervision and direction.

Defendant Pulver filed an answer, and brought counterclaims against the Debtors for breach of contract and indemnification, and filed a Third Party Complaint against one of the reorganized Debtors, Media Live International, Inc. for breach of covenants of indemnification and warranty set forth in the 2001 and 2003 purchase agreements. The Defendants claim that the [**5] alleged breaches absolve them of any liability for the Plaintiff's avoidance claims. [5]

5  Debtor's Motion, at 3.

The Creditor Representative and the Debtors (including Third Party Defendant Media Live International, Inc.) have reached a settlement with Defendant Pulver regarding the two avoidance actions. [6] The Settlement Agreement calls for the payment of $ 1,150,000 from Pulver to the Creditor Representative in installments of (i) $ 600,000 within five days of the Court's approval of the Settlement Agreement, then (ii) $ 100,000 per month for five months, and (iii) $ 50,000 in the sixth month. The Settlement Agreement also calls for each side to release the other from any and all related claims.

6  *See* Settlement Agreement and Mutual Release, Exhibit A to Debtors' Motion

The Creditor Representative and the Debtors now seek approval [**6] of the Settlement Agreement pursuant to *Rule 9019. FED. R. BANKR. P. 9019.*

* *

The Debtors argue that the proposed settlement should be approved because it is supported by sound business justifications and is reasonable. They also argue that litigation of a fraudulent transfer claim would be complex, and would require extensive discovery, with professional fees in excess of $ 500,000. [7] Further, the analysis of reasonably equivalent value could range considerably. The Debtors note that Pulver has also raised counterclaims which, if successful, would negate the Debtors' recovery. Finally, even if successful, since Pulver is a privately held entity of unknown equity, the ability of the Debtors to recover could be questionable or delayed. [8]

7  Debtors' Motion, at 6.
8  *Id.*

The Objection of the Interface Creditors argues that the estate has a very strong cause of action against the Defendants, and therefore, the probable outcome of the litigation outweighs the expense. [**7] [9] To support its belief that it would be successful in litigation, the Interface Creditors point to the facts that the Debtor sold assets for $ 4,375,000 in 2003 only two weeks before it filed for relief under the Bankruptcy Code, and that the sale came only six months after finalizing the purchase price of the [*92] same assets for $ 41,502,000. [10] Additionally, the sale price was lower than a renegotiated sale price of $ 8,000,000 that was discussed in December 2002.

9  Objection of the Interface Creditors, at 4-5.
10  *Id.* at 4.

Further, the Interface Creditors argue that the expenses of litigation would be outweighed by the likelihood of recovery. On this point, their Objection notes that the estate has already expended fees of $ 9,600,000 on other administrative fees and expenses related to the Bankruptcy filing. The Interface Creditors also refer to its counsel's offer to prosecute the underlying proceeding on a contingency fee basis of forty percent (40%) of the amounts recovered in excess of $ 1,150,000, [**8] with costs to be paid by the estate as incurred. [11] Finally, addressing the Debtors' concern for the ability to recover a judgment from the Defendants, the Interface Creditors argue that Pulver has recently received about $ 41,500,000 in cash from Key3Media in the subject transactions.

11  *Id.* at 5 n.2.

In response, the Debtors argue that the proposed compromise provides substantial benefit to the estate. The Debtors note that the decline in price is largely explainable by the effects of September 11, 2001 on the willingness of customers to travel, and by general business trends in the internet industry. [12] Debtors also deny the existence of a purported $ 8,000,000 purchase agreement negotiated in December 2002, and allege that the $ 4,375,000 sale price was a market price for the business obtained after unsuccessful efforts to find an alternative buyer. [13] Finally, Debtors note that the Objection of the Interface Creditors does not address the possibility of a ruling in favor of Pulver's counterclaims, [**9] which would nullify any avoidance recovery, regardless of the strength of the avoidance claims. [14]

12  Debtors' Reply, at 2.
13  *Id.*
14  *Id.*

* * *

[HN1] Pursuant to Bankruptcy *Rule 9019(a)*, the authority to approve a compromise settlement is within the sound discretion of the bankruptcy court. *See, e.g., In re Coram Healthcare Corp., 315 B.R. 321, 329 (Bankr. D. Del. 2004); In re Trism, Inc., 282 B.R. 662, 666 (B.A.P. 8th Cir. 2002).* In exercising this discretion, the bankruptcy court must determine whether the compromise is fair, reasonable, and in the best interest of the estate. *In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997).*

[HN2] Under *Rule 9019(a)*, the bankruptcy court has a duty to make an informed, independent judgment that the compromise is fair and equitable. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424, 88 S. Ct. 1157, 20 L. Ed. 2d 1 (1968); Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996).* [**10]  To be informed the

bankruptcy court "must be apprised of all relevant information that will enable it to determine what course of action will be in the best interest of the estate." *In re Martin, 91 F.3d at 393.*

[HN3] In its efforts to resolve the matter, "it is not necessary for a bankruptcy court to conclusively determine claims subject to a compromise, nor must the court have all of the information necessary to resolve the factual dispute, for by so doing, there would be no need of settlement." *In re Martin, 212 B.R. 316, 319 (B.A.P. 8th Cir.1997).* Nor is the court required to make a determination that the settlement is the [*93] best possible compromise. *In re Coram, 315 B.R. at 330.* In determining whether to approve a settlement, "the court is not supposed to have a mini-trial' on the merits, but should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness.'" *E.g., In re Jasmine, Ltd., 258 B.R. 119, 123 (D. N.J. 2000)* (citing *In re Neshaminy Office Bldg. Associates, 62 B.R. 798, 803 (E.D. Pa.1986)).*

[HN4] When determining whether a compromise is in the best [**11] interests of the estate, the Court must "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." *Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996)* (citing *TMT Trailer Ferry, 390 U.S. at 424-25).* Four criteria that a bankruptcy court should consider in striking this balance include (1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors. *Id.* Additionally, the Court should consider the proposition that "to minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy.'" *Id.* (quoting 9 COLLIER ON BANKRUPTCY P 9019.03[1] (15th ed. 1993)); *see also In re Beaulac, 294 B.R. 815, 819 (B.A.P. 1st Cir. 2003).*

[HN5] The Debtors carry a burden of persuasion to provide the court with sufficient information to conclude that the compromise falls within the reasonable range [**12] of litigation possibilities. *See In re Coram* (citing *In re Penn Central Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979)); In re Lawrence & Erausquin, Inc., 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990).* This is not, however, a burden of proof regarding the underlying claim. While a court generally gives deference to a Debtors' business judgment in deciding whether to settle a matter, the Debtors have the burden of persuading the bankruptcy court that the compromise is fair and equitable and should be approved. *In re Mickey Thompson Entertainment Group, Inc., 292 B.R. 415, 420 (B.A.P. 9th Cir. 2003); see also In re Vazquez, 325 B.R. 30, 36 (Bankr.*

*S.D. Fla. 2005)* ("The court is neither to rubber stamp' the [Debtors'] proposals nor to substitute its judgment for the trustee's.").

* * * *

For the reasons below, the Court finds that the proposed settlement reached by the Creditor Representative, the Debtors, and the Defendants is fair, equitable, and in the best interest of the bankruptcy estate.

**1. Probability of Success**

The Debtors' complaint brought claims under *11 U.S.C. §§ 544(b)* [**13] , *548, 550* and *New York Debtor and Creditor Law §§ 273, 274.* [HN6] Under the Bankruptcy Code and New York Debtor and Creditor Law,

> In order for a transfer of a debtor's interest in property or any obligation incurred by the debtor to be considered a fraudulent conveyance and to be avoided, the Trustee must show that the debtor received less than reasonably equivalent value in exchange for such transfer or obligation (using the language of the Bankruptcy Code) or that the conveyance was made without fair consideration (using the language of the New York Debtor and Creditor Law).
>
> Courts typically use these terms interchangeably, and do not usually make a distinction between the standard required [*94] for reasonably equivalent value, on the one hand, and fair consideration, on the other. Accordingly, this Court too will use these terms interchangeably for the purposes of this decision, and will treat the Trustee's claims under *section 548(a)(1)(B)* of the Code and under *sections 273* and *274* of the New York Debtor and Creditor Law collectively.

*In re Applied Theory Corp., 323 B.R. 838, 840-41 (Bankr. S.D.N.Y. 2005); In re Foxmeyer Corp., 286 B.R. 546, 570 (Bankr. D. Del. 2003)* [**14] (concluding that New York Debtor and Creditor Law sections 273-75 were essentially identical to *§ 548(a) of the Bankruptcy Code).* [HN7] The burden of proving that the debtor received less than reasonably equivalent value under *§ 548* rests upon the trustee. *Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 646 (3d Cir. 1991).*

[HN8] Under fraudulent transfer law, the determination of reasonably equivalent value should consider the

totality of the circumstances, including "a variety of factors, such as the fair market value of the item or service received compared to the price paid, the arms-length nature of the transaction, and the good faith of the transferee." *E.g., In re Burry, 309 B.R. 130, 137 (Bankr. E.D. Pa. 2004)* (citing *Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc. (In re R.M.L., Inc.), 92 F.3d 139, 148 (3d Cir. 1996)); In re Exide Technologies, Inc., 299 B.R. 732, 748 (Bankr. D. Del. 2003)*. Further, the determination of reasonably equivalent value must be made at the time of the transaction. *In re Morris Communications NC, 914 F.2d 458, 466 (4th Cir. 1990)* [**15] (citing *COLLIER ON BANKRUPTCY § 548.09* (15th ed. 1984)) ("The critical time is when the transfer was made.'"); *In re Calvillo, 263 B.R. 214, 219 (W.D. Tex. 2000)* (citing *Matter of Fairchild Aircraft Corp., 6 F.3d 1119, 1125-26 (5th Cir. 1993)); Peltz v. Hatten, 279 B.R. 710, 737 (Bankr. D. Del. 2000)*.

Therefore, in order to prevail on the merits of the underlying fraudulent transfer action, the Debtors would carry the burden of showing, by a preponderance of the evidence, that, at the time of the transactions in question, they paid (in the 2001 purchase) and received (in the 2003 sale) less than reasonably equivalent value for the Pulver assets. For the allegations regarding the 2001 purchase, the Debtors would be required to establish that the price paid (ultimately agreed to be $ 41,502,000) was unreasonably high in comparison to the value of the Pulver assets in September 2001. Similarly, in order to prevail on its allegations regarding the 2003 sale, the Debtors would have the burden of showing that the price received ($ 4,375,000) was unreasonably low in comparison to the value of the Pulver assets [**16] in January 2003. In both instances, the Debtors would be faced with the inherently difficult proposition of establishing the "true value" of the Pulver assets at the time of the transaction in question.

Despite this burden of proof, the Interface Creditors assert that the "estate has a very strong cause of action against these Defendants." [15] The Interface Creditors look to the drastic decline in price as evidence that the Debtors did not receive reasonably equivalent value in one or both of the transactions in question. [16] They also point out that the original purchase price of $ 41,502,000 was finalized in August 2002, only six months before the Debtors agreed to sell the same assets for $ 4,375,000. Additionally, the Interface Creditors cite an alleged $ 8,000,000 renegotiated sales price in December 2002.

15  Objection of the Interface Creditors, at 4.
16  *Id.*

[*95] The Debtors, however, offer contradictory explanations for the dramatic decline in the price of the Pulver assets. According to the Debtors, [**17] Pul-

ver.com "relies heavily on, among other things, customers' willingness to travel to the events of September 11, 2001, the day following closing of the 2001 Sale, as well as general business trends in the internet industry." [17] The Debtors also note that the assertion that the original purchase price was finalized only six months before the final sale is misleading, as it ignores the fact that the original sales agreement was made in September 2001, with an immediate cash payment of $ 36,000,000. The August 2002 agreement merely finalized the distribution of the remaining funds held in escrow. Further, the Debtors vehemently deny the existence of an agreement to sell the Pulver assets for $ 8,000,000. [18] Debtors further note that the January 2003 sale price was negotiated after being unsuccessful in its attempts to find an alternative buyer, despite the use of investment bankers to attract interest. Therefore, Debtors claim that the $ 4,375,000 price received in January 2003 was a market price for the Pulver assets.

17  Debtor's Reply, at 2.
18  *Id.*

[**18] The Interface Creditors challenge the reasonableness of the transaction price on the purchase and subsequent resale of the Pulver assets. No valuation data was introduced by the Interface Creditors to support a different market price. [HN9] The fact that the Debtors later chose to sell the assets for a much lower price than it originally paid is not sufficient, alone, to show that it did not receive a reasonably equivalent value in either transaction. *In re R.M.L., Inc. 92 F.3d at 151* (rejecting an approach that would "permit a court viewing the events with the benefit of hindsight to conclude that any transfer that did not bring in the actual, economic equivalent of what was given up fails to confer reasonably equivalent value as a matter of law.").

Further, [HN10] the valuation of intangible assets, such as the Pulver brand names, is inherently difficult to establish conclusively. *See Seaboard Finance Co. v. Martin, 244 F.2d 329, 331 (5th Cir. 1957)* ("The good will represented by a corporate name or a trade name is intangible and difficult of exact description or valuation."). This is especially true in the Internet and technology industries, as the sharp decline [**19] in the market value of the Pulver assets was not an isolated occurrence during the relevant time period.

The good faith of the Debtors and the arms length nature of the transactions have not been questioned by the Interface Creditors. The Debtors strongly argue that they engaged in significant due diligence prior to both transactions. That assertion was uncontroverted by any party in interest, including the Interface Creditors. The 2001 purchase price of $ 41,502,000 was based in part upon a multiple of 5.75 times the approximate $

7,000,000 of EBITDA generated by the Pulver assets. [19] For various reasons, the EBITDA of the Pulver assets fell to a level of $ 1,000,000 projected for 2003. [20] The fact that EBITDA fell well short of projections, however, does not show that the forecasts made at the time of the purchase were unreasonable, especially when the subject assets were directly affected by unforeseen incidents, such as the terrorist attacks of September 11, 2001 or the economic woes which befell the internet industry. [HN11] Predicting the operating performance [*96] of the Pulver assets was an exercise of the business judgment of the Debtors. *See In re Adelphia Communications Corp., 2004 Bankr. LEXIS 971, 2004 WL 1634538, [**20] *3 (Bankr. S.D. N.Y. 2004)* (holding that "predictions of that character are, at best, educated guesses," and that the Debtor's assessment of risk "is exactly the kind of business decision that the business judgment rule respects."). Even a Debtor exercising the most cautious judgment, however, could not have been expected to foresee the occurrence of such events at the time of purchase, and then to incorporate the effects of those events in the valuation of the Pulver assets. *See Hotel Emples. Int'l Union Local 54 v. Elsinore Shore Assocs., 173 F.3d 175, 181 (3d Cir. 1999)* (citing *20 C.F.R. § 639.9(b)*) [HN12] ("The employer is not required, however, to accurately predict general economic conditions that also may affect demand for its products or services."); *In re Organogenesis Inc., 316 B.R. 574, 588 (Bankr. D. Mass. 2004).* The Debtors, therefore, would be faced with a difficult burden of showing that it was unreasonable assumptions, and not the effect of these catastrophic events, that led them to overvalue the Pulver assets.

19  Deposition of Peter Knepper, at 74-75. [**21]

20  *Id.* at 75.

The Debtors would face similar obstacles in prevailing on its claims regarding the 2003 sale. Given the intangible and nature of the Pulver assets, and the industries from which they derived their revenue, the prevailing market price during the transaction period is likely to be the most accurate assessment of value for assets of this nature. *In re Bennett Funding Group, Inc., 232 B.R. 565, 572 (Bankr. N.D.N.Y. 1999)* (recognizing that [HN13] even a discount from estimated market value may be considered reasonable where the transaction involves a unique object, or intangible property); *In re Bay Plastics, Inc., 187 B.R. 315, 330 (Bankr. C.D. Cal. 1995)* ("The values of assets must be updated in light of subsequent use and market conditions: in accounting parlance: they must be marked to market.'"). There is persuasive evidence to support the Debtors' claim that they received market price for the Pulver assets. The Debtors employed investment bankers to market the Pulver assets. Although market price is not the only factor to be considered in the

determination [**22] of "reasonably equivalent value," it would be exceedingly difficult for the Debtors to show that the value received was substantially less than the true value of the assets at the time. *See Henderson v. Andrews (In re Perry County Foods, Inc.), 313 B.R. 875, 895-96 (Bankr. N.D. Ala. 2004)* (noting that [HN14] courts measuring reasonably equivalent value "have consistently viewed its location to be a point on a continuum of prices which is at and below to some degree the market value."); *In re Colonial Realty Co., 226 B.R. 513, 523 (Bankr. D. Conn. 1998)* (citing *Cooper v. Ashley Communications, Inc. (In re Morris Communications NC, Inc.), 914 F.2d 458, 466 (4th Cir.1990))* ("Fair market value, while not dispositive, is an important element and often a starting point for determining reasonably equivalent value.").

For these reasons, the Court finds that probability of success in litigation is low.

**2. Likely Difficulties in Collection**

The most immediate difficulties associated with collection are the Defendant's counterclaims and third party claims. A successful result in the primary litigation would require further litigation on the Defendant's breach [**23] of contract and indemnity claims. Even if the fraudulent transfer claims were to be successfully litigated, the Defendant's breach of contract and indemnity claims would negate any recovery to the Debtors. Although the Creditor Representative and the Debtors believe that they would be able to successfully defend [*97] against the Defendant's claims, [21] the possibility remains that the Debtors would not receive any proceeds from the litigation, or at least that such recovery would be delayed. The collection of a judgment could be further delayed by the potential for appeal by the Defendant.

21  Debtors' Motion, at 7.

The Debtors also claim that Defendant is a privately held entity of unknown equity, and that its ability to pay a multi-million dollar judgment is highly questionable. [22] This argument, however, is without evidentiary support.

22  *Id.*

[**24] **3. Complexity, Expense, Inconvenience, and Delay of Litigation**

It is undisputed that this matter would involve expert testimony, motion practice, and extensive discovery. The Debtor estimates that these costs could easily exceed $ 500,000. [23] The Interface Creditors make three responses to these potential costs. First, the Interface Creditors note that the estate expended $ 9,600,000 in administrative fees and expenses between February 2003 and June 2003 in the Chapter 11 proceedings. Second, the Interface

Creditors believe that the costs are outweighed by the probable outcome of the litigation. Third, the Interface Creditors state that their own counsel would be willing to accept the matter on a contingency fee basis of 40% of the amounts recovered in excess of $ 1,150,000, costs to be paid by the estate.

23  *Id.*

The Interface Creditors' objections on this point are without merit. [HN15] The prior costs already incurred by the estate are irrelevant in the determination of whether a current settlement [**25] proposal is in the best interests of the estate. Administrative fees and expenses are necessary, and often non-discretionary, costs to obtaining the relief provided by Chapter 11. The fact that the Chapter 11 process has been costly thus far does not make future expenses more favorable. The issue at hand is whether the net benefits of *this* litigation are outweighed by the value of the proposed settlement.

The self-serving offer of the Interface Creditors' counsel to prosecute this matter on a contingency fee basis may arguably mitigate the costs of litigation, but does not necessarily eliminate the costs involved, either monetarily, or in terms of the delay involved.

### 4. Paramount Interest of Creditors

[HN16] While creditors' objections are not controlling, emphasis is placed on the paramount interests of creditors and proper deference given to reasonable views set forth in their objections. *In re American Reserve Corp., 841 F.2d 159, 161-62 (7th Cir. 1987)*; *In re A & C Properties, 784 F.2d 1377, 1382 (9th Cir. 1986)*. In addition to the creditors' objections, the court may give weight to the opinions of the trustees, the parties, and [**26] their counsel, in determining the reasonableness of the proposed settlement. *In re A & C Properties, 784 F.2d at 1382*. As the largest independent claimholders in these proceedings, [24] the Court has given the Objection of the Interface Creditors proper deference in determining what constitutes the best interests of the estate.

24  Objection of the Interface Creditors, at 5.

On the other hand, the objections of the Interface Creditors cannot be permitted to predominate over the best interests of the estate as a whole. *See In re American Reserve Corp., 841 F.2d at 162* (when determining [*98] whether a proposed settlement is in an estate's best interests, the court "must necessarily examine the relative priorities of the contested claim and the estate's other claims."); *In re Flight Transp. Securities Litigation, 730 F.2d 1128, 1138 (8th Cir. 1983)*. In this regard, it is of significance that a consortium of secured lenders, collectively, possess blanket liens on all of [**27] the Debtors' assets. Not only have such lenders supported the resale of the Pulver assets by the Debtors, it is unrefuted that they are not opposed to the present Motion to Approve Settlement.

### CONCLUSION

Accordingly, the Motion for Order Approving Settlement is hereby GRANTED. The objection thereto is OVERRULED. Each party is to bear its respective costs.

### IT IS SO ORDERED.

Dated, this 7th day of October, 2005

JUDGE RANDOLPH BAXTER

UNITED STATES BANKRUPTCY COURT

### JUDGMENT

In Delaware, in said District, on this 7th day of October, 2005.

A Memorandum Of Opinion And Order having been rendered by this Court in this matter.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Movant's motion is hereby granted. The objection thereto is overruled. Each party is to bear its respective costs.

IT IS SO ORDERED.

RANDOLPH BAXTER

JUDGE

UNITED STATES BANKRUPTCY COURT

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

LIQUIDATING TRUST OF RESMAE
MORTGAGE CORPORATION,
f/k/a RESMAE MORTGAGE
CORPORATION,

Debtor.

Chapter 11

Case No. 07-10177 (KJC)

### AFFIDAVIT OF SERVICE

STATE OF DELAWARE    )
                     ) SS
NEW CASTLE COUNTY    )

Cathy A. Adams, being duly sworn according to law, deposes and says that she is employed by the law firm of Landis Rath & Cobb LLP, co-counsel to the Liquidating Trust of ResMAE Mortgage Corporation in the above referenced case, and on the 3rd day of July, 2008, she caused a copy of the following:

### MOTION PURSUANT TO BANKRUPTCY RULE 9019 TO APPROVE A STIPULATION OF SETTLEMENT RESOLVING CLAIMS

to be served upon the parties identified on the attached list in the manner as indicated.

Cathy A. Adams

SWORN TO AND SUBSCRIBED before me this 3rd day of July, 2008.

Notary Public

CASSANDRA D. LEWICKI
Notary Public - State of Delaware
My Comm. Expires Dec. 1, 2008

596.002-21010.DOC

Scott C. Lechner, Esq.
Office of the General Counsel
Lehman Brothers Inc.
745 Seventh Avenue, 19th Floor
New York, NY  10019

Richard C. Pedone, Esq.
Amelia M. Charamba, Esq.
Nixon Peabody LLP
100 Summer Street
Boston, MA  02110

**Liquidating Trust of ResMAE Mortgage
Corporation, f/k/a ResMAE Mortgage Corporation
Case No. 07-10177 (KJC)**

**Post-Effective Date Service List**

*Hand Delivery*
(Counsel for the Debtor)
Mark D. Collins, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

*First Class Mail*
(Counsel to the Plan Sponsor/Reorganized ResMAE)
Van C. Durrer, II, Esquire
Glenn Walter, Esquire
Skadden Arps Slate Meagher & Flom LLP
300 South Grand Avenue, Suite 3400
Los Angeles, CA 90071

*First Class Mail*
(Co-Counsel to the Liquidating Trust
of ResMAE Mortgage Corporation)
Mark S. Indelicato, Esquire
Hahn & Hessen LLP
488 Madison Avenue
New York, NY 10022

*Hand Delivery*
(Co-Counsel to the Liquidating Trust
of ResMAE Mortgage Corporation)
Richard S. Cobb, Esquire
Kerri K. Mumford, Esquire
Landis Rath & Cobb LLP
919 Market Street, Suite 600
Wilmington, DE 19801

*Hand Delivery*
(U.S. Trustee)
Richard Schepacarter, Esquire
Office of the United States Trustee
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE 19801

*First Class Mail*
Jeanne R. Rentezelas
Assistant Vice President
and Senior Assistant Counsel
Popular Finance Holdings, Inc.
301 Lippincott Drive
Suite 100
Marlton, NJ 08053

*First Class Mail*
(Oversight Committee Member)
John McDonagh
JPMorgan Chase Bank, N.A.
270 Park Avenue, 39th Floor
New York, NY 10017

*First Class Mail*
(Counsel for JPMorgan)
Thomas H Grace, Esquire
Elizabeth Freeman, Esquire
Locke Liddell & Sapp
3400 JPMorgan Chase Tower
600 Travis St., Ste. 3400
Houston, TX 77002

*First Class Mail*
(Counsel for Nomura Credit & Capital, Inc.)
Lorraine S. McGowen, Esquire
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103-0001

*First Class Mail*
(Oversight Committee Member)
Juliet F. Buck
Nomura Credit & Capital, Inc.
2 World Financial Center, Bldg. B
New York, NY  10281

*First Class Mail*
(Oversight Committee Member)
Mark Manski
Director
Barclays Bank PLC
200 Park Avenue
New York, NY  10166

*First Class Mail*
(Counsel for Nomura Credit & Capital, Inc.)
Richard H. Wyron, Esquire
Orrick, Herrington & Sutcliffe LLP
Columbia Center
1152 15th Street, N.W.
Washington, DC  20005-1706

*Hand Delivery*
(Counsel for AT&T Inc., f/k/a AT&T Corp.
and SBC Communications, Inc.)
Charles J. Brown, III, Esquire
Archer & Greiner
A Professional Corporation
300 Delaware Avenue, Suite 1370
Wilmington, DE  19801

*First Class Mail*
(Counsel for Barclays Bank PLC)
Richard S. Miller, Esquire
Robert T. Honeywell, Esquire
Kirkpatrick & Lockhart
Preston Gates Ellis LLP
599 Lexington Avenue
New York, NY  10022

*First Class Mail*
(Special Counsel to the Debtor)
Samuel A. Newman, Esquire
Gibson, Dunn & Crutcher LLP
333 South Grand Avenue
Los Angeles, CA  90071

*First Class Mail*
(Special Counsel to the Debtor)
Oscar Garza, Esquire
Gibson, Dunn & Crutcher LLP
Orange County Office
3161 Michelson Drive
Irvine, CA  92612-4412

*Hand Delivery*
(Counsel to Deutsche Bank Structured Products, Inc.,
Aspen Funding Corp. and Newport Funding Corp.)
Laurie Selber Silverstein, Esquire
Theresa V. Brown-Edwards, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street, 6th Floor
P.O. Box 951
Wilmington, DE  19899-0951

*First Class Mail*
(Counsel to Deutsche Bank Structured Products, Inc.,
Aspen Funding Corp. and Newport Funding Corp.)
Steven Wilamowsky, Esquire
Bingham McCutchen LLP
399 Park Avenue
New York, NY  10022-4689

*First Class Mail*
(Counsel to Merrill Lynch)
Walter H. Curchack, Esquire
P. Gregory Schwed, Esquire
Vadim J. Rubinstein, Esquire
Loeb & Loeb LLP
345 Park Avenue
New York, NY  10154

***Hand Delivery***
(Counsel to Merrill Lynch)
Robert J. Dehney, Esquire
Derek C. Abbott, Esquire
Thomas F. Driscoll II, Esquire
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347

***First Class Mail***
(Counsel to Christine E. Perez)
Jonathan L. Parshall, Esquire
Murphy & Landon
1011 Centre Road, Suite 210
Wilmington, DE  19805

***First Class Mail***
Neil L. Herskowitz
Riverside Claims
2109 Broadway
Suite 206
New York, NY  10023

***First Class Mail***
(The CIT Group/Consumer Finance, Inc.)
Richard P. Norton, Esquire
Hunton & Williams, LLP
200 Park Avenue
New York, NY  10166

***First Class Mail***
(Liquidating Trustee of ResMAE Mortgage
Corporation)
Alan M. Jacobs, President
AMJ Advisors LLC
999 Central Avenue
Suite 208
Woodmere, NY  11598

***First Class Mail***
(Authorized Agent for Countrywide Home Loans, Inc.)
A.  Michelle Hart, Esquire
McCalla Raymer, LLC
1544 Old Alabama Road
Roswell, GA  30076-2102

***First Class Mail***
(The CIT Group/Consumer Finance, Inc.)
Jason W. Harbour, Esquire
Hunton & Williams, LLP
951 East Byrd Street
Richmond, VA  23219

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

In re:   Liquidating Trust of ResMAE Mortgage Corporation
f/k/a ResMAE Mortgage Corporation

| | |
|---|---|
| Merrill Lynch Bank USA, Merrill Lynch Mortgage Lending Inc., and Merrill Lynch Funding Corporation,<br><br>Appellants,<br><br>v.<br><br>ResMAE Mortgage Corporation, RMC Mortgage Holdings LLC, and the Liquidating Trust of ResMAE Mortgage Corporation,<br><br>Appellees. | Civil Action No. 07-428 (SLR)<br><br><br><br><br>Bankruptcy Case No. 07-10177<br>Bankruptcy Appeal No. 07-69 |

**ORDER GRANTING CONSENT MOTION TO ENLARGE TIME
PERIOD STAYING MEDIATION PURSUANT TO RULE
<u>9006(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE</u>**

Upon consideration of the motion (the "<u>Motion</u>")[1] of the Trust for entry of an order pursuant to Rule 9006(b) of the Federal Rules of Bankruptcy Procedure to enlarge the time period staying mediation; and the Court having determined that the basis for the relief requested in the Motion is sufficient cause to grant the Trust's request to enlarge the time period staying mediation; and it appearing that due notice of the Motion has been given, and that no further notice need be given; and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.     The Motion is GRANTED on the terms set forth herein.

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion.

2.     Mediation in this proceeding is further stayed for a period of thirty (30) days after the Bankruptcy Court's order approving the 9019 Motion becomes final.

3.     This Court retains jurisdiction to interpret, implement and enforce the terms and provisions of this Order.

Dated:  July _____, 2008
        Wilmington, Delaware


_____
The Honorable Sue L. Robinson
Chief United States District Court Judge